## HOUSTON, Ex'r, &c., vs. BR. BANK AT HUNTSVILLE.

1. It is a general rule, founded on principles of natural reason and justice, that a surety, paying off a debt, shall stand in the place of the creditor, and have all the rights which the creditor had for the purpose of reimbursing himself; but he can acquire no greater rights than the creditor had.

2. G. executed a deed of trust to secure the acceptors of two bills of exchange, one of which, drawn by himself, and endorsed and accepted for his accommodation, was negotiated and held by the Branch Bank at Huntsville, and the other, to which he was no party, but which was drawn, endorsed and accepted for his accommodation, negotiated and held by the Branch Bank at Decatur; the debt to the latter Bank was extended under the act of 1837, the bill delivered up to the drawer and cancelled, a new note executed by him, with the other endorser and G. as sureties, and another deed thereupon executed by G. to secure the payment of this note : *Held*, that the payment of this note by the surety did not entitle him, under the equitable doctrine of subrogation, to share in the security afforded by the first deed.

ERROR to the Chancery Court of Lauderdale.

HEARD before the Hon. E. D. TOWNES.

THE original bill in this case was filed by Hervey Dillahunty and John Chisholm ; and the former having died, the suit was revived in the name of Pugh Houston, his executor, who is the plaintiff in error. The object of the bill was, to establish Dillahunty's right to share with the Bank in the security afforded by a certain deed of trust, and to enjoin a judgment at law which the Bank had obtained against Chisholm as Dillahunty's surety on certain notes hereinafter particularly described. The facts of the case, as disclosed by the pleadings and proofs, may be briefly stated as follows :

The said deed, conveying real and personal property, was executed by William W. Garrard, on the 14th of September, 1836, to Thomas U. Lassiter as trustee, to secure Taylor, Mason & Co. against their accommodation acceptance of two bills of exchange, one of which, drawn by Garrard, was endorsed by Henry Garrard and John Arnett, and negotiated and held by the Branch Bank at Huntsville ; and the other, to which said Garrard was no party, but which was drawn by William Arnett for his accommodation, and endorsed by

Henry Garrard and said Hervey Dillahunty, was negotiated and held by the Branch Bank at Decatur. The debt to the Decatur Bank was afterwards extended under the act of 1837; the bill delivered up to the drawer, William Arnett, and cancelled; new notes executed by him, payable in three annual installments, with said William W. Garrard and Hervey Dillahunty as sureties; and another deed thereupon executed by said Garrard to John H. Arnett, as trustee, to secure the payment of these notes. The bill charges, that the complainant Dillahunty did not intend, by taking this second deed, to waive any rights which he might have under the first deed, and that he took the second deed only because it was doubtful whether the first had been legally acknowledged and registered.

The first installment on the new notes was paid by said Garrard, and the balance of them by said Dillahunty. The trustee in the first deed afterwards sold the property conveyed by it, pursuant to its terms; at which sale Dillahunty became a purchaser of a portion of it, and gave his notes, with said Chisholm as surety, for the purchase money. The trustee assigned these notes to the Branch Bank at Huntsville, and judgment was afterwards obtained on them by the Bank against said Chisholm, which is the judgment sought to be enjoined. The complainant, Dillahunty, insisted that, if the first deed was held inoperative on account of its imperfect acknowledgment and registration, then he was entitled to the entire proceeds of the sale of the property; and that, if that deed was held valid, then he should be subrogated to the rights of the Branch Bank at Decatur under it. The chancellor dismissed the bill, and his decree is now assigned for error.

L. P. & R. W. WALKER, for the plaintiff in error:

1. The principal creditor is, in equity, entitled to the full benefit of any security given by the debtor to his surety for his indemnity.—7 Ala. 362-7; 8 *ib.* 866-72; 4 Comstock 313; 1 White's Eq. Cas. 120, and cases cited; 1 Johns. C. 119, 129; 5 Barb. S. C. R. 398-405. A security given by the principal debtor to one surety enures to the common benefit of all the sureties.—1 White's Eq. Cas. 99; 5 Barb. S. C. R. 405, and

authorities *supra*. Hence, the first deed of trust, although made nominally for the benefit of Mason, Taylor & Co., the acceptors of the bill, enured to the benefit of the Decatur Bank, which discounted the bill, and which was the real creditor ; and all of the sureties were entitled to the benefit of the deed. The doctrine of subrogation is the creature of equity, and is administered so as to secure essential justice, without regard to form. As between the principal and surety, payment by the surety is in the nature of a purchase by the surety from the creditor. It operates, in equity, an assignment of the debt and of all legal proceedings on it, and gives a right in equity to call for an assignment of all securities ; and in favor of the surety, the debt and all its obligations and incidents are considered as still subsisting.—3 Leigh 272, (295) ; 1 White's Eq. Cas. 103-4, 107-11, and cases cited ; 14 Vesey 162 ; Lyon v. Bolling, 9 Ala. 466.

The doctrine of Copis v. Middleton, 1 Tur. & Russ. 229, (11 Eng. Ch. R.), adopted by this court in Foster v. Trustees of Athenæum (3 Ala. 302, 310), has no application to this case, inasmuch as that doctrine does not reach a case where the security is distinct from the surety's obligation, and cumulative and collateral to the original debt.—1 Tur. & Rus. 229 ; 3 Myl. & K. 190 ; 9 Ala. 464, 467 ; 14 Vesey 162 ; 1 White's Eq. Cas. 108-9, 110-11. But the doctrine of Copis v. Middleton is not law.—11 Leigh 309 ; 12 *ib.* 274 ; 1 Speer's Eq. 534, 543 ; 1 Barr 512 ; 2 Brock. 160 ; Pride v. Boyce, Rice's Eq. Rep. 276. The only courts holding to it are those of Vermont, North Carolina and Alabama. The deed of trust being an accessorial security, if Dillahunty (the surety) has paid the debt secured by it, he is entitled to be substituted to all the rights of the Decatur Bank under it.—1 Tur. & Rus. 229 ; 9 Ala. 464.

2. Has Dillahunty, as a surety of W. W. Garrard, paid the debt secured by the first deed of trust? The facts all show, that W. W. Garrard was the real debtor ; and equity will unquestionably consider Dillahunty, the endorser for his accommodation, as his surety. It is true, the original bill of exchange described in the deed of trust was afterwards taken up by the note of Arnett, W. W. Garrard and Dillahunty, given under the extension law of 1837, and that by this

arrangement the form of the debt and the time of payment were changed. But this change in the form and time of payment did not affect the identity of the debt. Equity looks to the substance, not the form of things; and if the debt paid by Dillahunty, as surety on the note, is the identical debt evidenced by the bill of exchange of which he was endorser, and which was secured by the deed of trust, then the deed still subsisted as a security, following the debt through all its phases, and Dillahunty can hold to it as a lien for his indemnity. In the case of the substitution, exchange, alteration, or renewal of bills or notes, the identity of the debt is not lost by the operation. The debt remains the same; the evidence of the debt only is changed.—14 Ala. 46; 10 S. & M. 120, (128). Independent of this general rule, it is obvious that under the relief law of 1837 (Clay's Dig. 112, § 51), the new note given in this case was a mere extension, not an extinguishment or payment, of the old debt.—14 Ala. 633; *ib.* 33, (46); 4 Hill 448.

It may be true, as argued by the chancellor, that all right of action was lost to the Bank by the giving of the note in lieu of the bill; still that does not affect the question of lien in any way.—14 Ala. 33, (46); 1 White Eq. Cas. 111. Nor does it matter that there was a change of parties when the note was given; the *debt* was still essentially the same.—10 S. & M. 120. Suppose a creditor, holding a note against one and his surety, the note being secured by deed of trust, sues the principal, obtains judgment and execution, and a delivery bond is given and forfeited, and judgment thereon is rendered against the principal and sureties on the delivery bond; does this change in the form of the debt, and the presence of additional parties to it, affect its identity, or impair the lien of the creditor under the deed? If the identity of the debt remains, i. e., if it be the same debt, then all accessorial securities continue to subsist, despite changes in the form of the debt. Absolute payment of the mortgage money, or a re-conveyance by the mortgagee, can only destroy the lien of the mortgage. The mere cancellation of the note, and substitution of a new one, has no such effect.—2 U. S. Eq. Dig. 351, § 1285. That the taking up of the bill, and the execution of a new note with an extension of payment, does not discharge the lien of the deed of trust, see 14 Ala. 33 (46), 633; 4 Johns. Ch. 65; 8 Blackf.

99 ; 10 S. & M. 120 ; 2 U. S. Eq. Dig. 348-9, §§ 1230, 1233, 1234-7, 1274-7, 1285-6, 421; 18 Ala. 42.

3. But admitting that the original debt secured by the first deed of trust was paid by the extended note, does this alter the case? The original debt was really W. W. Garrard's ; and Dillahunty, being his accommodation· endorser, was his surety. Now, if the extended note paid the original debt, who paid it? Certainly, the makers of that note, of whom Dillahunty (the accommodation endorser on the bill, and *ex vi termini* the surety) was one. Upon this payment by Dillahunty of the original debt, he was subrogated to the rights of the Bank under the deed ; and without even waiting until he had actually paid off this extended note, he could have filed his bill to have it discharged out of the proceeds of the sale under the trust deed, applying the *pro rata* share of the Decatur Bank for that purpose.—11 Ala. 352 ; 1 White's Eq. C. 87-90 ; Rice's Eq. Rep. 276 ; 1 Speer's Eq. 534-43; 6 Gill & Johns. 243 ; 4 Johns. Ch. 123; 1 Bland's R. 103-5; 1 Rand. 53; 3 Ired. Ch. 513; 5 Barb. S. C. R. 398 (410). A payment by a surety, by giving his negotiable note, entitles him to subrogation.—1 White's Eq. Cas. 102; 5 Barb. S. C. R. 398 (410); 2 Metc. 561.

It will be found, that all the cases relied on by the chancellor, as sustaining his decree, were cases in which there was no independent accessorial security, e. g. where there was a joint note, or a joint judgment,. and nothing more. There, according to the authorities cited by the chancellor, the note, or the judgment, being paid, was *functus officio*, and "got back" to the principal debtor, leaving nothing independent of the note or the judgment, by which the surety could be reimbursed. Here, the bill of exchange and the deed of trust were independent contracts, and payment of the bill did not, of itself, operate a satisfaction of the deed ; for that depended on the question, who paid it? If paid by the grantor, then the deed was satisfied ; but if paid by a surety, the deed still continued in full force for his indemnity. A court of equity will keep an incumbrance alive, or consider it extinguished, as will best serve the purposes of justice, and the actual and just intention of the parties.—Starr v. Ellis, 6 Johns. Ch. 393.

S. D. CABANISS, *contra :*

1. The right of subrogation must arise during the existence of the liability for which the lien was given, for the obvious reason, that when the liability is extinguished, the lien, having accomplished its purpose, is discharged, and the party to whom it was given, having no farther claim to the security, has no right to which any one can be subrogated. When a surety pays the debt to the creditor, he is regarded, in equity, as the purchaser of the debt, and is therefore entitled to the security given the creditor, as an incident to the debt. In that case, the debt is not regarded as being extinguished, but assigned to the surety.

2. But when the Decatur Bank accepted of W. W. Garrard the extension note, and surrendered to him the bill of exchange, the liability of Taylor, Mason & Co., as acceptors of the bill, was, *eo instanti,* extinguished ; the security given them against that liability, being no longer necessary for their protection, was discharged, and "got back" to W. W. Garrard; and they, the acceptors, ceased to have any right to it, to which any one could be substituted.

3. But the Decatur Bank and Garrard did not occupy the relation of creditor and debtor during the existence of the lien. If the extension note had not been taken, the Bank could not have sustained an action against him, or reached his property, except as the garnishee of Taylor, Mason & Co., upon the allegation of their insolvency ; and any other creditor of Taylor, Mason & Co. would have had the same right. Garrard was a stranger to the bill; there was no privity of contract between him and the Bank; the bill was discounted, not upon his credit, but on that of the parties to it. The effect of the transaction was this : that Taylor, Mason & Co. borrowed money from the Bank on their acceptance, to be advanced or loaned to Garrard, and the latter gave Taylor, Mason & Co. a security to place them in funds to meet a debt contracted by them for his accommodation. They became the debtors of the Bank and the creditors of Garrard. If this position be correct, then Dillahunty could not claim through the Bank as creditor of Garrard, nor could the Bank claim as a creditor, during the existence of the lien, through Taylor, Mason & Co., as sureties of Garrard.

4. But if it should be considered that the Decatur Bank was, as holder of the bill, the creditor of Garrard, and as such had the right of substitution to Taylor, Mason & Co.'s lien, after their liability was discharged, yet, we contend, that Dillahunty cannot claim that right through the Bank, for that would be claiming a right of being subrogated to a right of subrogation, and extending the doctrine a step farther than the courts have ever gone.

5. If Dillahunty and Taylor, Mason & Co. are regarded as co-sureties for Garrard on the bill, he is precluded from asserting any right to the lien, by reason of such co-suretyship; for the reason, that long before he made any payment on the debt, he consented to the discharge of Taylor, Mason & Co.'s liability, and (as a consequence) to the extinguishment of the lien given them as an indemnity; and for the further reason, that he at the same time bargained for and got an independent security in the deed to Arnett, the terms and stipulations of which were inconsistent with and repugnant to those of the deed to Lassiter.

The following authorities are relied upon:—10 Leigh's Rep. 221; Bank of Virginia v. Boisseau, 12 *ib.* 387; Leading Cases in Equity, pp. 99, 100, 101, and notes; Brown v. Lang, 4 Ala.

CHILTON, C. J.—William W. Garrard, having executed a trust deed to T. U. Lassiter, trustee, to save Taylor, Mason & Co. harmless by reason of their acceptance of two bills of exchange, one drawn by him, and sold to the defendant in error, the other by Wm. Arnett, in favor of Henry Garrard, and endorsed by him and Hervey Dillahunty to the Decatur Bank, but solely for Wm. Garrard's accommodation, which was done on the 14th December, 1836, afterwards, on the 25th June, 1838, availed himself of the law of 1837, authorizing the extension of indebtedness to the Banks; and thereupon Wm. Arnett, the drawer, executed his note, payable in three yearly installments, with Hervey Dillahunty and W. W. Garrard sureties, and took up said bill of exchange held by the Decatur Bank. At the same time, the said Wm. Garrard, who was the real principal, executed another deed in trust to John H. Arnett, embracing a portion of the property included in the

deed to Lassiter, with other property not embraced, with provisions varying from those contained in the first deed. Dillahunty has paid a portion of these last named notes to the Bank at Decatur, and he now seeks to come in and share in the security which the first deed afforded to that Bank, for the payment of the bill which was taken up by Arnett, the drawer, on the execution of the notes and deed above named. The question is, shall he be relieved under the equitable doctrine of subrogation ?

We have carefully looked into the cases which bear upon the question, and although, from the very general and loose terms in which some of them assert the doctrine, they might be considered as supporting the complainant's case, yet we feel very confident that the current of the modern and more authoritative cases, both in this country and England, is opposed to the claim which is set up. It is not denied, that the general rule is, that the surety, paying off a debt, shall stand in the place of the creditor, and shall have all the rights which he had, for the purpose of being reimbursed the amount he has paid. We may concede, too, that this doctrine should be favored, as it is founded on the principles of natural reason and justice.—Hodgson v. Shaw, 3 My. & K. 190-1-2. But the surety, thus paying, can certainly acquire no greater right than the creditor whose position he is enabled to take by the decree of the court. The cases which have carried this doctrine further than any others, are Parsons v. Briddock, 2 Vern. 608, and Wright v. Morley, 11 Ves. jr. 22 ; and these establish, that where the creditor sues the principal, and the latter gives bail, and a judgment is likewise obtained against the bail, but the sureties on the original bond are compelled to pay, they may avail themselves of the judgment against the bail for their reimbursement ; in short, that the surety, paying the debt, had precisely the same rights which the creditor had. But, speaking of the last of these decisions, Judge Story says, it has been much questioned, and must now be deemed to be much weakened in point of authority.—1 Story's Eq. § 499 a.

What is meant by subrogation, a term which has been borrowed from the civil law ?· It is the substitution of a new for an old creditor ; or, in its more general sense, " the act of putting, by a transfer, a person in the place of another, or a

thing in the place of another thing."—Bouv. Inst., vol. 2, p.
69 ; *ib.*, vol. 1, p. 321. By this transfer, the new creditor is
subrogated to all the rights of the original creditor. To as-
certain, therefore, the rights which complainant may lawfully
claim, we must first see what were the rights of the Decatur
Bank at the time of the payment of this debt by Dillahunty ;
for to these rights alone he can succeed.

It cannot be denied, that the giving of the note by William
Arnett, with Dillahunty and William W. Garrard as sureties,
and the execution of the trust deed by Garrard to John
Arnett, and the surrender of the bill of exchange by the De-
catur Bank to the drawer, is an absolute extinguishment of
all liability on the part of Taylor, Mason & Co., as acceptors
of the bill. This substitution of the notes for the bill was, as
to these acceptors, a payment by Garrard ; and he was there-
fore, according to the very terms of his deed to Lassiter, dis-
charged from all further obligation to them in respect of its
payment. The bill being *functus officio*, and having been de-
livered up to the drawer, the party primarily liable, and can-
celled, what right had Taylor, Mason & Co. to insist upon
the security provided in the trust deed to Lassiter, so far as
respects it? The deed, as to it, according to its terms, be-
came void and of no effect. Any attempt, therefore, on the
part of Taylor, Mason & Co., to set it up as a subsisting secu-
rity for their indemnity on account of this bill, which was
discharged and cancelled, would have been a clear violation
of the stipulations of the deed.

Having seen that the deed, as to them, with respect to this
bill, was satisfied and "void and of no effect," let us see
whether the Decatur Bank could have pursued the property.
There is no privity as between the Bank and the deed, except
through the bill. The security taken by the acceptors enured
to the benefit of the Bank, upon the principle, that all parties
to the bill being liable and equally bound to the Bank for its
payment, no arrangement entered into between them could
withdraw their property from liability to satisfy the demand,
so long as it remained the property of either. Upon breach
of the condition of the deed in the non-payment of the bill,
the Bank would have been substituted for the acceptors, or,
if you please, subrogated to their right to have the trust exe-

cuted, and the proceeds applied to the payment of the bill, thus carrying out its object—the security and protection of Taylor, Mason & Co.—by satisfying their obligation and discharging them from liability.

But the Bank accepted another security, and agreed forever to discharge Taylor, Mason & Co.; at least, such is the effect of this arrangement, and whether the notes taken in virtue of the arrangement are paid or not, the Bank has surrendered all right to proceed on the bill against the acceptors, and consequently all right to avail itself of a security which the acceptors had taken, which security was discharged the moment the acceptors were released.

To illustrate my meaning : Suppose the Bank, after delivering up the bill, and after the notes, taken in lieu of it, had fallen due and remained unpaid, had filed a bill to have the trust executed in its favor ; upon what principle could the court have afforded relief ? The trustee, Lassiter, could have replied, " You seek to enforce a contract, which, by your own act, you have rendered void and of no effect according to its very terms." He might further add, " I was authorized to sell this property for the protection of Taylor, Mason & Co., on their acceptance of the bill of Wm. Arnett, having eight months to run. This bill has been discharged. They have been fully protected ; the object of the bill, as to them, has been accomplished. They have exhibited to me the bill, taken up by the drawer and cancelled." What then ? Can the chancellor make a new contract for the parties ? Can he add new stipulations to the satisfied deed, or prescribe new objects to be accomplished by it, wholly foreign from what was in the contemplation of the parties when it was executed ? Clearly he cannot.

But it is said, the *debt* still exists, although the evidence by which its existence is proved has been changed ; and that the Court of Chancery will not sacrifice the justice and substantial merits of the case in deference to mere form. To this we reply, that as to the essential party through whom the equity is to be worked out in favor of the Bank—the acceptors—the proposition is not true : the debt, as to them, does not exist, but is satisfied, paid, and discharged ; and this necessarily puts an end to their right to go upon the security which the

deed till then afforded. Having no such right, it follows as a necessary consequence, that none could be imparted through them to the Bank, much less to a party to the bill who has discharged it, by entering into a new and different agreement with the creditor, upon the faith of a new and different security for his indemnity, executed by the principal debtor.

The principle settled in Copis v. Middleton (1 Tur. & Russ. 224-231), by Lord Eldon, which is fully sustained by Lord Brougham in Hodgson v. Shaw (3 Myl. & K. 183), and said by Judge Story to be a masterly exposition of the doctrine upon this subject (Story's Eq. Juris. § 499 c, note 1, p. 561, 4th ed.), fully sustains the view we take of this case. Lord Eldon said : "It is, a general rule, that in equity a surety is entitled to the benefit of all securities which the creditor has against the principal. But then the nature of these securities must be considered. When there is a bond merely, if an action is brought upon the bond, it would appear, upon oyer of the bond, that the debt was extinguished. The general rule, therefore, must be qualified, by considering it to apply to such securities as continue to exist, and do not get back, upon payment, to the person of the principal debtor." The effect of the discharge of Taylor, Mason & Co., we have seen, satisfied the deed, with respect to this bill, as to them, and the property embraced in it went back to the grantor, or, rather, was retained by Lassiter for the satisfaction of a demand with which the Decatur Bank had no connection. As between W. W. Garrard and Taylor, Mason & Co., it was the duty of the latter, at the request of the former, to have entered satisfaction, as to the cancelled bill, on the deed.—See Clay's Dig., p. 156, § 32. But having satisfied the deed as to this demand, it remained as security for the bill to the Huntsville Bank, and it would be inequitable, in our opinion, to divert the fund from that object ; for, if it is to be apportioned between the two demands, by which Taylor, Mason & Co. are left to pay the balance to the Huntsville Bank, it will be, in effect, to make them respond to the payment of the bill, from which they have been discharged, to the extent of the fund, which will be withdrawn from their indemnity, and applied towards refunding money paid out by one of the sureties on the notes

given to renew or extend it. We think it would not only be unjust to deprive Taylor, Mason & Co., or the Huntsville Bank, of the full benefit of this security, in favor of those who have voluntarily cancelled the original demand, by assuming its payment on the faith of a new and different security; but to put Dillahunty in the place of Taylor, Mason & Co. would be carrying this doctrine of substitution beyond any case we have seen, and farther than is warranted by principle. It would be to deprive a surety of an advantage fairly obtained— to subrogate to a supposed right of subrogation, which right, as we have shown, was voluntarily yielded up by the Bank at Decatur, in consideration of other security for the demand given by the principal debtor, by surrendering the bill and discharging and displacing the party through whom alone a privity could be established as between the Bank and the trust deed.—Story's Eq. Pl., §§ 262, 514.

The cases cited from our own Reports do not conflict with the view we have taken. In all of them where the doctrine of subrogation has been applied and upheld, there were rights, to which the complainant could be subrogated, existing at the time of the payment. Such is not the case here; but this case is more nearly assimilated to that of Brown v. Lang *et al.*, 4 Ala. Rep. 50-54. In that case, the principal debtor died, and after his death his administratrix and sureties on the original demand made from time to time new notes, taking up and cancelling or extinguishing the old. Finally, the sureties were compelled to pay the debt; and the question was, whether they should not be subrogated to the rights of the creditor, and be reimbursed out of the estate of the original debtor. The court say: "There is nothing in the record from which it can be inferred that the Bank did not intend to discharge the intestate's estate from all liability to pay the note of which he was a joint maker; and we cannot, against the direct allegation of the bill, suppose that there was a continuing liability. The creditor, then, could not, at law, or in equity, have charged the estate of the intestate in the hands of his administratrix; *and the surety, whose claim is deduced through the creditor, cannot look to any source of reimbursement of which the latter could not have availed himself.*"

This principle, we think, is decisive of the case before us;

HARVARD LAW SCHOOL LIBRARY

for it is too clear to admit of argument, that Taylor, Mason
& Co. were discharged by giving the new notes and can-
celling the bill.

There is no error in the decree of the chancellor, and it is
consequently affirmed.