105 So.2d 643

ALABAMA FARM BUREAU MUTUAL INSURANCE SERVICE, Inc.

v.

George M. NIXON.

8 Div. 919.

Supreme Court of Alabama.

Oct. 9, 1958.

Scruggs & Scruggs, Guntersville, and
H. H. Conway, Albertville, for appellee.

Lusk & Lusk, Guntersville, for appellant.

STAKELY, Justice.

The question in this case arose between a vendor and vendee of realty when the improvements thereon were destroyed by fire during the time between the inception of the contract of sale and prior to its consummation by delivery of the warranty deed. The parties to the contract had no agreement about insurance but the vendor insured the buildings on the property in his own name and paid the premiums out of his own funds. The question is whether the proceeds of this insurance should inure to the benefit of the vendee so as to cancel the unpaid balance of the purchase price.

The facts show that in January of 1955, R. E. Buckelew, the vendor, and George M. Nixon, the vendee, entered into an oral contract of sale. The price was fixed at $7,000, $1,000 down and $1,000 to be paid per month for a period of six months. Nixon was put in possession of the property and it was agreed that Buckelew would deliver to him a warranty deed, conveying title to the property, when the purchase price was paid in full. Buckelew secured a policy of insurance covering his equity in the property with his own funds and in his own name from Alabama Farm Bureau Mutual Insurance Service, Inc., the appellant in this cause, in the amount of $6,000. Two buildings were on the premises, one the main building, a combination building consisting of a dwelling and a store, the other a feed barn. The store was operated as a gas service station.

The parties also entered into contracts with one Slaton, whereby Slaton purchased the fixtures and stock of the store from Buckelew, and leased the building from Nixon. Slaton had no need for the living quarters in the main building so he subleased that part of it to Buckelew, who continued to live therein.

Nixon made payments on the purchase price until the buildings were burned on June 4, 1955. The main building was a complete loss and the feed barn was heavily damaged. At the time Nixon still owed Buckelew $2,000 of the original contract price, having paid $5,000.

Appellant, Alabama Farm Bureau Mutual Insurance Service, Inc., admitted coverage under the policy as follows:

Main building ------------------ $4,500.00
Buckelew's personal effects ----- 1,000.00
Feed barn --------------------- 500.00

Total -------------------- $6,000.00

In making its settlement with Buckelew appellant made the following allowances:
Main building, 100% loss, limited
    by Buckelew's equity ------- $2,000.00
Buckelew's personal effects,
    100% loss ----------------- 1,000.00
Barn, 50% loss ---------------- 250.00

Total -------------------- $3,250.00

Appellant delivered a draft for $3,250 to Buckelew on July 12, 1955, and received its release. Although Buckelew had received $2,000 from the insurance company which represented his total remaining equity in the property, he also wanted to collect the remaining balance of the purchase price from Nixon. However, Nixon demanded that Buckelew deliver to him a warranty deed and on Buckelew's refusal to do so, Nixon filed his original bill of complaint in this cause in the equity court. In his answer to the bill which was prayed to be taken as a cross bill, Buckelew contended that Nixon owed him $2,000, the remainder due under the contract purchase price and further, making the insurance company a party to the cross bill, contended that the insurance company should be required to pay $6,000, the face value of the insurance policy, instead of only $3,250.

The insurance company, Alabama Farm Bureau Mutual Insurance Service, Inc., made answer to the cross bill and not only disclaimed any further obligation under the policy, but prayed that it be subrogated to the rights of Buckelew against Nixon under the contract of sale and that the court decree that Nixon pay it the balance of the purchase price.

The court in its final decree found that Nixon and Buckelew had entered into a valid contract which was not subject to the Statute of Frauds and that under the contract there was an unpaid balance due Buckelew of $2,000, but it further found that Buckelew had received $2,000 under the insurance policy and that this amount "should be and is applied to the balance of the indebtedness due to the said R. E. Buckelew." In order to do equity it further decreed that Nixon pay Buckelew the full amount of the insurance premiums which he had paid for the insurance.

Only the Alabama Farm Bureau Mutual Insurance Service, Inc., has appealed. It insists on five assignments of error. All of these except the last, which is assignment No. 11, come down to a contention that the insurance company should be subrogated in the place of Buckelew for the $2,000, which Nixon has not paid on the purchase price. In its last assignment of error, Assignment No. 11, the appellant complains of what it considers an ambiguity in paragraph 5 of the court's decree. Paragraph 5 reads as follows:

"5. That cross complainant and cross respondent, insurance company, upon payment of the sum of $3,250.00, representing the full amount of the respondent Buckelew's interest in said property, is hereby discharged from any and all further liability in regard to said policy, either to Complainant or to Respondent, with its reasonable costs."

The appellant feels that the words "upon payment of the sum of $3,250.00", imply the idea that the liability of the insurance company has not been discharged. Buckelew has not appealed and there is no indication that he is insisting on any further liability from the insurance company. Considering the questioned phrase in its context and with the rest of the decree, it should be interpreted to mean that the insurance company (appellant) is discharged from any further liability either to Buckelew or to Nixon.

The other assignments of error insisted on by the appellant all present the proposition that the insurance policy purchased by vendor is a personal indemnity to him, that the proceeds did not inure to the benefit of vendee so as to discharge the remainder of the contract price under the contract of sale and that the insurance company, having paid the loss, should be subrogated to the rights of its insured.

We shall consider first the question of subrogation. In the early case of Houston v. Branch Bank, 25 Ala. 250, 257, subrogation was defined as "the act of putting, by a transfer, a person in the place of another." It should further be observed that the insurance company cannot have subrogation unless Buckelew is Nixon's creditor and still has a right to the remainder of the purchase price under the contract of sale. The insurance company can acquire no greater right against Nixon than Buckelew had against him. This court in an early case said:

"It is undoubtedly true, that a security who pays the debt of his principal, is subrogated to all the rights of the creditor, so far as regards the securities and equitable remedies held by him for the payment of his debt. Story's Equity, § 499. But whilst this is true, it is equally true, that where the security has thus paid the debt of his principal, he cannot stand in a better or higher position than the creditor. * * *." Colvin v. Owens, 22 Ala. 782, 794.

The principle set forth in the foregoing case has been followed in later cases. American Bonding Co. of Baltimore v. Fourth National Bank, 205 Ala. 652, 88 So. 838; Turner v. Lumbermens Mutual Ins. Co., 235 Ala. 632, 646, 180 So. 300.

Therefore, before we can apply the doctrine of subrogation we must determine that Buckelew has a valid claim against Nixon for the remainder of the purchase price and further at this point

we call attention to the proposition that this court has held that "Subrogation is not a matter of strict right. It is of equitable origin, and dependent in its application upon the facts of each particular case. * * * And, while no general rule may be laid down as applicable to all cases, yet, to justify its application, it must appear that the enforcement of the doctrine will not only best serve the substantial purposes of justice, but also the true intention of the parties." Jefferson Standard Life Ins. Co. v. Brunson, 226 Ala. 16, 17, 145 So. 156.

If we should determine that Buckelew has a valid claim against Nixon for the remainder of the purchase price, this would mean that the court was in error in finding that as between Buckelew and Nixon, Buckelew's insurance could be used to cancel Nixon's debt. No decision in this state has been called to our attention which in our judgment determines the exact question here presented. In other jurisdictions we find that there has been no unanimity in the decisions.

In this connection in Bruce v. Jennings, 190 Ga. 618, 10 S.E.2d 56, 57, the Supreme Court of Georgia has stated the general rule as follows:

"It is the general rule that, where the purchaser goes into possession under a binding executory contract for the sale of improved realty which the seller is able to convey, but where, before the transfer of the legal title is consummated, the improvements are destroyed by fire without the fault of either party, the loss falls on the purchaser as the owner of the equitable title (Citing Authority). If in such a case the property was insured by the seller, he holds the insurance money which he may collect on the bargained property as trustee for the purchaser, subject, however, to his own claims for any unpaid purchase-money plus the insurance premiums. (Citing Authority). * * *."

If Buckelew may collect the proceeds of the insurance and also the full purchase price, he has a windfall and the purchaser is required to pay for that which he does not receive. In the case of Cetkowski v. Knutson, 163 Minn. 492, 204 N.W. 528, 529, 40 A.L.R. 599, the Supreme Court of Minnesota said:

"Long ago, it became 'too well settled to be questioned, that policies of insurance against fire are personal contracts with the assured, which do not attach to the realty, or in any manner go with the same, as incident to a conveyance or transfer of the title to land.' * * * But the proceeds of an insurance policy may be affected by a trust for the benefit of some one other than the named insured. * * *."

This is because neither the vendor nor the vendee may insure anything other than his own interest. The vendor may insure against the loss of his security interest, while the purchaser, as the equitable owner, may insure against the loss of the property itself. These are two entirely different interests. When there is a loss and the vendor has effected insurance, the proceeds from the insurance come to him in place of his security interest. In this connection the Supreme Court of Virginia said:

"It is well settled that when the vendor of the property effects insurance in pursuance of such a contract, the insurance is collateral security for the payment of the debt, and the vendor must credit the debt by whatever amount he may realize from such insurance if not in excess of the debt, and if in excess of the debt, the residue must be paid over by the vendor to the vendee. And this is true whether the insurance be of property or only of the vendor's insurable interest therein. * * *." Camp & Meehl v. Christo Mfg. Co., 122 Va. 439, 95 S.E. 424, 425, L.R.A.1918D, 936.

In the case at bar the vendor had a security interest which had been reduced by payments to $2,000. After the fire the maximum value of the property was approximately $2,250, but the $2,000 insurance money made him whole. To require the purchaser also to pay $2,000 would be to give the vendor both his purchase price and his security. He is not entitled to both for both would give him $9,000, for what he contracted to sell for $7,000. Furthermore to allow such a result would constitute a temptation to vendors to insure and destroy the property so as to collect both the remainder of the purchase price and the proceeds of the insurance. For example, the Supreme Court of California has said:

> "From this it necessarily followed that Stewart, from the time of taking possession, acquired an insurable interest equivalent to the value of the buildings, and that, if plaintiffs (vendors) could collect the insurance and keep it, they would be paid twice over for the buildings, so that they would have a direct interest in their destruction. * * *." Smith v. Phenix Ins. Co., 91 Cal. 323, 27 P. 738, 739, 13 L.R.A. 475.

We are persuaded to follow the results reached by the Court of Appeals of Kentucky as expressed in Godfrey v. Alcorn, 215 Ky. 465, 284 S.W. 1094, 51 A.L.R. 925, a case which is exactly in point. The facts in that case are so similar to the facts in our case, we will set them out in some detail.

In that case Ethel Alcorn and her husband executed to Godfrey and Chase their bond for title to certain realty and the purchasers were put in possession. The consideration was fixed at $1,000, $350 down and notes were signed by the purchasers, one for $150 payable in 60 days and one for $500 payable in twelve months. The bond for title executed by vendors stipulated that no deed was to be delivered until the full purchase price plus interest had been paid.

A year later, the 12 month note remaining unpaid, Ethel Alcorn purchased an insurance policy covering her interest in the property for $500 for a period of three years. The policy was in her own name and paid for by her own funds. Fourteen months later the house was destroyed by fire. By that time, however, the purchaser had paid additional amounts on the note, including interest, and the remainder due was only $359.33, so the insurance company discharged its obligation to vendors by paying them that amount. Under what the insurance company called "subrogation" it required the vendors to assign to it the unpaid note. It then transferred the note to one Beatty. Beatty attempted to assert a purchase money lien under the note and the purchaser instituted an action for specific performance claiming, as it is claimed in the instant case, that the proceeds of the insurance should discharge the debt.

The appellate court held in effect that the assignment of the note did not constitute the assignees bona fide purchasers because of their knowledge of the circumstances. It held that the property of the purchasers had been made to pay the balance of the purchase price and therefore "the chancellor looking to the equities of the situation will refuse to enforce as against the purchasers this unpaid purchase money and thereby make them pay more than the purchase price." [215 Ky. 465, 284 S.W. 1096] It noted that to allow vendor to enforce the note would allow her to collect $1,359.33 as the purchase price for property which she had contracted to sell for $1,000. It refused to apply the doctrine of subrogation, saying:

> "In the absence of an agreement therefor, the only right of subrogation the insurance company could have had must grow out of some equity arising for its benefit from the nature of the transaction. Subrogation is essentially a creature of equity, and is called in play by the chancellor only when it is necessary to bring about an equita-

ble adjustment between the parties. We fail to see, therefore, what equity there existed in favor of the insurance company to justify it being indemnified by Alcorn for the loss, when it had for a stipulated compensation insured her to the extent of her interest. It had merely done for compensation that which its contract required it to do, and in pursuance of the business it was created to engage in.

\* \* \* \* \* \*

"In this case, to hold that the insurance company is entitled to subrogation, and to enforce against the purchasers the collection of the unpaid purchase money, and thereby compel them to again pay a part of the purchase price which their property had already canceled, because of the insurance contract held by Alcorn, would be to require the purchasers to pay about $360 more for the property than their contract price called for; and, in addition, would enable the insurance company which had indemnified Alcorn for a consideration, to enforce that claim when there was no consideration for its assignment to it, and no equity that entitled it to such assignment.

"Can it be said that, if this purchase-money note yet remained in the hands of Alcorn, she might enforce its collection after having collected from the insurance company, because of the destruction of the purchaser's property upon which she had a lien, the whole of the purchase price, and thereby collect from the purchasers $1,359.33 as the purchase price for property which she had contracted to sell to them for $1,000? The purchasers were the beneficial owners of the property. They not only had an enforceable bond for title, but they were in actual possession and enjoyment of it, and, when without fault upon their part it was destroyed by fire, and because of an insurance policy held by Alcorn insuring her equity in it their property was thus made to pay the balance of the purchase price, the chancellor looking to the equities of the situation, will refuse to enforce as against the purchasers this unpaid purchase money, and thereby make them pay more than the purchase price." Godfrey v. Alcorn, 215 Ky. 465, 284 S.W. 1094, 1095, 51 A.L.R. 925, 927–928.

The Kentucky court therefore held that since the vendor could not enforce the "alleged purchase-money lien," neither could the insurance company nor Beatty enforce it. Then, on its own motion, it ordered that purchasers do equity and reimburse the vendor for the amount of the premium.

Neither could the insurance company here have any right of subrogation because when Buckelew received the proceeds of the insurance he had no further claim against Nixon which would be enforced by a court of equity and thus there is no right to which appellant may be subrogated. Furthermore as we pointed out earlier in the opinion, subrogation is not a matter of right but may be applied only by the court in the interest of justice and each particular case must stand or fall on its own facts. We do not think that subrogation should be applied.

Appellant relies on the case of Murray v. Webster, 256 Ala. 248, 54 So.2d 505, 508, wherein is stated the general rule that "insurance taken by one with an insurable interest in the property, who pays the premiums \* \* \* out of his own funds, is a personal indemnity to the insured." There, however, we applied the principle that whether joint owners have an interest in insurance money properly turns upon the equities of the particular case, and held that the proceeds of the insurance policy, taken out by the vendor, were properly applied to the balance of the purchase price agreed to be paid by the vendees. In that case the insurance company was not a party and different considerations were

presented from those involved in the instant case. The conclusions, however, which we have reached in the case at bar are not contrary to anything decided in Murray v. Webster, supra. In fact, Murray v. Webster, supra, supports the conclusions here reached.

We therefore conclude that the decree of the lower court is due to be affirmed.

Affirmed.

LIVINGSTON, C. J., and LAWSON and MERRILL, JJ., concur.