321 So.2d 208

**Josephine D. RAWLINS**

**v.**

**Mary Lee COOK et al.**

**SC 1128.**

Supreme Court of Alabama.

Oct. 3, 1975.

Rehearing Denied Nov. 6, 1975.

John A. Lockett, Jr., Selma, for appellant.

Jackson & Sikes and William J. Bryant, Selma, for appellees, Mary Lee Cook as Executrix and heirs at law of Elmer L. Cook.

J. E. Wilkinson, Jr., Selma, for appellee, The Peoples Bank & Trust Company.

ALMON, Justice.

Elmer L. Cook, deceased was the owner of certain real property located in Dallas County. This property was mortgaged to the Peoples Bank and Trust Company of Selma. Cook entered into an oral contract on or about December, 1971, or January, 1972, to sell the property to appellant, Josephine D. Rawlins, for $70,000.00 with appellant agreeing to maintain fire insurance on the premises for the benefit of the purchaser, seller, and mortgagee as their interests appeared. Appellant paid $10,500.00 down and went into possession of the premises on January 1, 1972.

Elmer L. Cook, the seller, died testate on February 12, 1972. In and by his last will and testament Mary Lee Cook, one of the appellees herein, was named executrix of his estate and was devised the subject property. Shortly after the death of the seller, on or about March 23, 1972, appellant filed a bill for specific performance relative to the subject property (hereinafter called Suit I). Subsequent to the filing of the bill for specific performance but prior to trial, appellant entered into a written contract of sale of the subject premises to Thomas Gober for the sum of $70,000.-00. Gober paid $1,000.00 as a binder but never went into possession of the property. The bill for specific performance was tried on June 9, 1972, and the decree was entered on August 1, 1972.

The main structure located on the subject premises was destroyed by fire on July 5, 1972. Notwithstanding the fact that appellant had procured insurance on the subject property in accordance with the terms of the oral contract, the insurance companies refused to honor the claim relative to the damaged property, and the mortgagee bank, the assignee of each of the insurance

policies, brought suit (hereinafter called Suit II). By amendments, appellant and the other appellees were made parties to the suit. The estate of Elmer L. Cook and others, likewise, filed suit against the insurance companies. In a pretrial order, the court consolidated the two cases against the insurance companies for jury trial. The jury returned a verdict in the amount of $60,000.00. On the trial of the case, all of the parties stipulated the amount owed the bank and the fact that it had a first lien on the funds and should be paid the amount of its mortgage.

Appellant made application to the court for a rehearing of its decree of August 1, 1972, involving Suit I. The application was continued from time to time until the conclusion of Suit II and was subsequently granted by the court on June 21, 1974.

On April 4, 1974, the trial court entered an order disbursing the insurance proceeds ultimately received as a result of Suit II. The law firm of Jackson and Sikes was awarded $11,310.77 as attorneys' fees and out-of-pocket expenses; the mortgagee was awarded $31,118.58 in payment of its mortgage on the subject property; and the remaining proceeds were held by the court pending a determination of the rehearing of Suit I.

A final decree determining the rights of appellant and granting her specific performance in Suit I was entered on December 23, 1974, from which this appeal was taken.

Appellees have filed motions in this court claiming assignments of error I and V (dealing with attorneys' fees and payment or the mortgage) should be struck as they relate to action by the trial court in its judgment in Suit II, from which no appeal was taken. While there is some merit to this motion, we need not address ourselves to it as we are of the opinion that assignments of error IV (dealing with the remaining balance on the purchase price of the property) properly raises the question of the distribution of the insurance proceeds in Suit I from which this appeal was taken.

Appellant contends that the trial court erred in finding that appellant owed a remaining unpaid balance on the purchase price of $16,097.59. We agree.

Whether attorneys' fees were properly awarded in Suit II under Tit. 46, § 63, Code of Alabama 1940, Recompiled 1958, is not before us. In that regard, however, see a history of this section in *Dent v. Foy,* 214 Ala. 243, 107 So. 218 (1925).

The effect of the final decree in Suit I was to charge attorneys' fees to appellant.

The granting of specific performance of a contract is as though the court is enforcing the *quid pro quo.* The appellant, upon tendering into the court an appropriate sum of money, was entitled to the land and buildings contracted for. Since one of the buildings was destroyed by fire, she was entitled to the insurance proceeds subject only to prior legal claims against the proceeds. Clearly, the bank which held a mortgage on the property in question had such a prior claim. We find nothing in the record to indicate that appellant should be responsible for any attorneys' fees to which the attorneys for the estate of Elmer L. Cook may be entitled.

Thus, we hold that the appellant in the instant case should be given an additional credit of $11,310.77 toward the purchase price. There may be other matters of credit which the trial court should consider upon remandment of this cause.

The judgment is hereby reversed and the cause remanded for entry of judgment (final decree) in conformity with this opinion.

Reversed in part and remanded with directions.

MERRILL, BLOODWORTH, MADDOX, FAULKNER and EMBRY, JJ., concur.

HEFLIN, C. J., concurs in the result.

JONES, J., with whom SHORES, J., joins, concurs in the result with opinion.

JONES and SHORES, Justices (concurring specially):

From the posture of the record before us, we concur that the cause must be remanded and that Mrs. Rawlins cannot be charged the entire attorneys' fee. The majority holds that she cannot be charged any portion of the $11,310.77 fee paid to the attorneys for the estate. Perhaps this is true. To be sure, if the parties plaintiff in the insurance claim each employed their respective attorneys who contributed to the ultimate success of the litigation, absent any agreement to the contrary, then the fee distributed to the estate's attorneys should be chargeable solely against the estate. The record is unclear as to these facts. We believe that on remand of this cause further findings of fact should be made as a basis for an appropriate order of distribution of the proceeds of the insurance recovery among the respective parties.

As we understand the opinion of the majority, Mrs. Rawlins performed her obligation under the contract with Mr. Cook to procure insurance on the subject property, which insurance was to protect the interests of the buyer (Mrs. Rawlins), the seller (Mr. Cook) and the mortgagee (the bank) as their respective interests appeared therein.

We further understand from the majority that at the time of the loss Mrs. Rawlins had an equity interest in the property in the amount of $10,500, which was the down payment thereon. Although it is not clear, it appears that her equity may have been diminished by the $1,000 which she received as earnest money from Mr. Gober.

We do not have the record of the proceedings which resulted in the award by the jury of $60,000 in the consolidated suit by all claimants brought against the insurance companies. We do understand that the parties agreed to accept $59,000 in discharge of all claims against the insurers.

It appears that this $59,000, in some manner not absolutely clear from the record before us, became subject to disbursement by the court in the suit brought by Mrs. Rawlins against the estate of the seller seeking specific performance.

At the time of the decree ordering this disbursement, the balance due on the mortgage held by the bank was $31,118.58; Mrs. Rawlins' equity in the property was either $10,500 or $9,500; and the balance due the estate of the seller was apparently $28,381.42.

We are aware of the general rule that where the buyer goes into possession under a binding contract for the sale of improved realty, and, before the transfer of the legal title is consummated, the improvements are destroyed by fire, the loss falls on the buyer as the owner of the equitable title. It follows from this general rule that, if the property were insured, the proceeds normally would go first to satisfy the seller's interest with the excess, if any, to the buyer. *Alabama Farm Bureau Mutual Ins. Serv. v. Nixon*, 268 Ala. 271, 105 So.2d 643 (1958). See also 12 Ala.L.Rev. 379; Thompson on Real Property, Vol. 8A, § 4449 (1963). Likewise, where expenses of litigation are incurred to effect recovery from the insurance company, it necessarily follows that this expense would normally fall on the buyer.

But this latter conclusion contemplates that the recovery of the proceeds is a result of the buyer's efforts or that his inaction necessitated the seller's efforts in that regard.

In this case the record shows that the action against the insurance companies was initiated by the bank and is silent on the quantity and quality of the buyer's participation. It is equally silent as to the extent of the seller's participation and also silent as to any acquiescence by the buyer in the seller's role in obtaining the recovery.

Nothing in the record indicates that the bank's attorneys or the buyer's attorneys were paid any part of the recovery for their services in that litigation.

From the record before us, although it is not entirely clear, apparently the efforts of all of the interested parties, the seller's estate, the bank, and the purchaser, were instrumental in the success of the lawsuit brought against the insurance companies, which resulted in the recovery of a $60,000 jury verdict—later reduced by agreement to $59,000.

Yet, from this $59,000 the trial Court awarded to the. attorneys representing the estate of the seller an attorney's fee in the amount of $11,310.77.

The record does not clearly indicate that the recovery of the insurance proceeds was occasioned by the efforts of the attorneys representing the estate of the seller alone. In fact, one could infer from the references to this lawsuit that it was a joint effort by all of the interested parties which produced this result.

This being the case, we can find no justification for the trial Court's having awarded, out of the proceeds of that recovery, a fee only to those attorneys. In fact, it appears to us that the parties were entitled to attorneys' fees, if at all, based upon the pro rata share in the insured property which each party had at the time of the loss. In other words, the proceeds of the insurance policies was to be paid to the parties as their respective interests in the property then appeared. Of the recovery, the bank was entitled to the balance due on the mortgage. The remainder should have been prorated between the buyer and seller as their respective interests then appeared, and the attorneys for each of these parties should have had their fees awarded on the same pro rata basis as the interests of their clients had in the property covered by the insurance.

We find nothing to justify the Court's having awarded the attorneys representing the estate of the seller an award of fees, apparently without regard to the interest which the estate had in the insured property.

Disregarding the attorneys' fee disbursement for the moment, it appears that had the $59,000 been applied to the parties proportionately as their interests then appeared in the property, the bank would have received $31,118.52; and the seller's estate would have been entitled to some $28,381.42, apparently the balance due under the original contract. It is readily apparent, then, that the proceeds of insurance, for which Mrs. Rawlins had paid the premiums would have very nearly equated the amount owing on the mortgage and the balance due the seller under the original contract.

In other words, the total of the amount due the bank and the balance due under the contract to the seller was $59,499.94. Mrs. Rawlins had paid $10,500; when this is added to the $59,499.94, the sum is $69,999.94—within cents of the agreed upon $70,000 total purchase price.

The net result, then, of the disbursement decree is to leave Mrs. Rawlins with an obligation to pay the seller $28,381.42, with only $16,097.59 left, after the award of attorneys' fees to the seller, with which to meet that obligation.

She, therefore, under the terms of that decree is bearing the total cost of recovering the proceeds of the insurance while the record would indicate that this recovery was the joint efforts of all parties interested in the property. Thus, it would seem inequitable to require her to shoulder the entire burden, but rather more equitable to require the parties to share that burden based upon their respective interests in the insured property.

In other words, based upon the above factual presentation, the parties would be entitled to their attorneys' fees incurred in the procurement of the judgment against the insurance companies in the same pro-

portion that the amount of the recovery bears to the pro rata interest of each of the respective parties in the insured property.

Our concurrence in the result of the majority is limited to our agreeing that the cause should be remanded for a determination of what part, if any, of the total award of attorneys' fees in the insurance litigation should be borne by appellant.