This appeal is from an order granting the appellee's motion for a summary judgment. We reverse.
The appellant, William B. McGuire is engaged in the business of building and selling homes. In connection with this enterprise, McGuire acquired insurance coverage with appellant, American Liberty Insurance Co. under a "builder's risk" policy. Broadly speaking, American Liberty undertook to insure McGuire against losses incurred during construction.
In December, 1975, McGuire and the appellee, Ronald A. Wilson, entered into a contract for the sale of a residence in Northport, Alabama. This contract was contingent upon Wilson and his wife obtaining an FHA mortgage loan.
Prior to obtaining the FHA loan, the Wilsons moved into this residence pursuant to a lease provision in the real estate sales contract. Within a week, a fire occurred at the residence and the appellants alleged that this fire was caused by Wilson's negligence. The fire caused $22,421.77 in damages. This damage was repaired by McGuire and the sale was subsequently consummated according to the terms of the sales contract. American Liberty paid McGuire for the damages, evidently on the assumption that these damages were covered by the "builder's risk" insurance policy. The appellants filed this action in December, 1976, seeking to recover $22,421.77 from Wilson for the damages which they alleged were caused by Wilson's negligence.
In a related action, Southern Guaranty Insurance Company sought a declaratory judgment as to whether it was required to defend Wilson under the terms of a homeowners policy which it had issued to Wilson. The trial court in the declaratory judgment action ruled that Southern Guaranty Insurance Company was required to defend the appellee, Ronald A. Wilson, in this case and to pay any judgment rendered against Wilson up to the limit of Wilson's homeowners policy with Southern Guaranty.
The appellee, Ronald Wilson, filed a motion for summary judgment in this case and that motion was granted. The order granting summary judgment provided in pertinent part:
 The court finds that the plaintiff, William B. McGuire, is not a proper party plaintiff and is not a real party in interest and, therefore, there is no question of any material fact concerning the claim of William B. McGuire and the defendant is entitled to a judgment against plaintiff, William B. McGuire, as a matter of law.
 The court further finds that the claim of plaintiff, American Liberty Insurance Company is one based upon subrogation but the court finds that there is no genuine question of any material fact and that *Page 1299 
the plaintiff, American Liberty Insurance Company, has no right of subrogation against this defendant and further the court is of the opinion that subrogation should not be applied in this case against the defendant and, therefore, the defendant is entitled to a judgment as a matter of law.
McGuire and American Liberty have appealed, asserting the following grounds for reversing the judgment of the trial court: there are questions of material fact which preclude the granting of a motion for summary judgment and this Court should allow a quasi-contractual recovery against the appellee (and his insurer) to prevent unjust enrichment.
The appellants suggest that there are disputed factual questions with respect to the following points:
 1. whether the fire was negligently caused by the appellee;
 2. whether the appellee was a lessee under the sales contract or a vendee in possession;
 3. whether obtaining an FHA mortgage at 8% interest was a condition precedent to the enforceability of the sales contract; and
 4. whether the conduct of the parties implied a contract whereby the appellee was to pay for the cost of repairs.
In view of the decision we reach in this case, we need not treat each of these alleged factual discrepancies extensively. The summary judgment standard embodied in Rule 56, ARCP is conjunctive. There must not only be an absence of genuine issue as to material fact, but there must also be circumstances entitling the moving party to judgment as a matter of law. Regardless of how the factual issues may be ultimately resolved in this case, the record does not support the judgment of the trial court that as a matter of law, American Liberty is not entitled to a subrogation claim against the appellee.
Although the order of the trial court does not indicate why American Liberty's subrogation claim was denied, the appellee asserts that there are four independent theories that will sustain the judgment of the trial court.
The first of these theories is that the insurer, American Liberty, can obtain no greater rights against the appellee than the insured, McGuire has. The appellee contends that after the fire, McGuire could only claim the balance of the purchase price from the appellee. Notwithstanding the fact that the premises were repaired and the sale was subsequently consummated, the appellee contends that since the balance of the purchase price was tendered and accepted, the insured's claim against Wilson was extinguished and therefore the insurer's claim was also extinguished.
The appellee relies heavily on Alabama Farm Bureau MutualIns. Serv. v. Nixon, 268 Ala. 271, 105 So.2d 643 (1958). Nixon had entered a contract to buy property from Buckelew for $7,000. Buckelew insured the property in his own name with Alabama Farm Bureau Mutual Insurance Service and after Nixon had paid $5,000 of the purchase price, improvements on the property were heavily damaged. Alabama Farm Bureau Mutual paid Buckelew $2,000, the balance of the purchase price and attempted to subrogate itself to the rights of Buckelew against Nixon to recover $2,000 from Nixon. This Court denied the insurer's subrogation claim reasoning that "when Buckelew received the proceeds of the insurance he had no further claim against Nixon . . . and thus there is no right to which appellant may be subrogated." The Court pointed out that to allow the insurer to claim against the purchaser, Nixon, would require the purchaser "to pay for that which he does not receive." Thus, to summarize Nixon, by refusing the insurer's subrogation claim, the purchaser paid $5,000 for property originally worth $7,000 that had sustained $2,000 worth of damage. The seller received $7,000 for the property he had contracted to sell for $7,000; $5,000 from the purchaser and $2,000 from his insurer. The insurer paid the seller $2,000, the extent of the seller's loss, in accordance with the terms of the policy. *Page 1300 
Nixon held, in effect, that the payment of the insurance proceeds to the seller extinguished the seller's claim against the purchaser, and absent a viable claim of the seller against the purchaser the insurer was not entitled to subrogation. It is significant to note that, in Nixon, the risk of casualty loss to the property in question was neither discussed nor decided.
In this case the appellee unequivocally states in his brief that
. . . a vendor incurs the risk of loss of a building until the vendee takes possession or accepts the premises. At that point the risk of loss shifts to the vendee. Whether the premises are damaged with or without the fault of the vendee, he is responsible and is not absolved from his contractual obligation.
 Wilson was the equitable owner of the house when the fire occurred because he was a vendee in possession. [Citation omitted.] Therefore, the risk of loss by fire had shifted to him, and McGuire had no obligation to rebuild the property. McGuire's only claim against defendant was for the balance of the purchase price.
The appellee concedes that he bore the risk of loss in this case irrespective of fault, yet he attempts to avoid this loss despite allegations that the loss was caused by his negligence. The appellee clearly will succeed in avoiding this loss if the insurer is not allowed to subrogate his claim in this case.
Nixon, supra, does not require such a result, especially since it has been limited to its particular facts. ABCSupermarket, Inc. v. American Employers Ins. Co., 283 Ala. 13,214 So.2d 291 (1968). ABC Supermarket, supra, quoted a pre-Nixon case, Hackett v. Cash, 196 Ala. 403, 72 So. 52 (1916) with approval.
 Where a policy of fire insurance is upon the interest of the mortgagee, and does not accrue to the benefit of the mortgagor, the insurance company has a right to pay the mortgage and take an assignment or to become subrogated to the right of the mortgagee in case there is no assignment. 283 Ala. at 22, 214 So.2d at 298.
While we are not to be understood as strictly equating a vendor under a conditional sales contract with a mortgagee, the legal principles underlying an insurer's subrogation claim are analogous.
In City of Birmingham v. Walker, 267 Ala. 150, 101 So.2d 250
(1958), this Court noted that
 [t]he general rule is that when an insurer pays the insured in accordance with the insurance contract for a loss of property proximately resulting from fire caused by the actionable misconduct of a third party, the insurer becomes, by the doctrine of equitable subrogation, the owner, pro tanto, of the claim of the insured against the third party. If such payment only partially reimburses the insured for the loss, the insurer is subrogated only to the extent of the amount paid, and the insured remains the owner of the claim for the unreimbursed amount of the loss. If such payment by the insurer fully reimburses the insured for the property loss, then the insurer is subrogated to the entire right of insured against the third party.
 This doctrine is based on the theory that the insurer is a surety for the third party, who is the principal obligor to the insured, and so, upon the principle that one who has paid a debt for which another is primarily liable should be substituted for and have the rights of the primary creditor against the primary debtor, the insurer, with respect to the claim of insured against the third party tort-feasor, is held to be substituted for the insured to the extent of the amount so paid by the insurer. The equity of such principle is said to be that the insured has only one claim and is entitled to one payment only, and that the loss should ultimately fall on the third party who caused it. 267 Ala. at 154-155, 101 So.2d at 253.
In light of this general rule, we are unable to hold as a matter of law that American Liberty is precluded from asserting a subrogation claim against the appellee. It does not appear that the appellant McGuire's election to apply the insurance *Page 1301 
proceeds to the reconstruction of the damaged house bars American Liberty's equitable subrogation claim at the summary judgment stage in this proceeding.
The second proposition cited by the appellee as grounds for sustaining the judgment of the trial court is that Wilson, as the equitable owner of the property, had an insurable interest in the property and was therefore an insured under the "builder's risk" policy between American Liberty and McGuire. It is the appellee's position that McGuire collected the insurance proceeds and held them in trust for Wilson. Since Wilson was the beneficiary of the trust fund, he was an insured and American Liberty has no right of subrogation against its own insured.
A purchaser under a lease-sale contract has an insurable interest, Commercial Union Fire Ins. Co. of N.Y. v. Parvin,279 Ala. 645, 189 So.2d 330 (1966) and the courts have held that where the seller receives insurance proceeds, he does hold them in trust for the benefit of the purchaser. Nixon, supra; Annot. 64 A.L.R.2d 1402 (1959). It has never been held, so far as we can find, that the purchaser's beneficial interest in the insurance proceeds elevates his status to that of named insured. Birmingham Fire Casualty Company v. Lewis, 272 Ala. 685, 133 So.2d 876 (1961). In Lewis, supra, this Court made the following observation:
. . . Hence, when one holding property in mortgage, pledge, or hypothecation, as security merely, obtains insurance upon it, he simply strengthens his security, and obtains indemnity against its impairment by the casualty insured against. The insurer in such cases is held to be a guarantor, or indemnifier of the insured, that the debt or duty shall not become lost or forfeit, by the destruction of the security or pledge. If the debt be paid, or duty performed, then even a destruction of the property insured gives no right of action against the insurer. And if, in case of fire, the insurer indemnifies the assured by paying the loss, such insurer thereby becomes subrogated to the rights of the creditor or lienee against the debtor and may compel payment, in reimbursement of the loss it had paid.
272 Ala. at 689, 133 So.2d at 880, quoting Commercial Fire Ins.Co. v. Capital City Ins. Co., 81 Ala. 320, 323-24, 8 So. 222,223 (1886).
We are clear that American Liberty is not attempting to subrogate a claim against its insured.
The appellee also argues that American Liberty is not entitled to subrogation because they made a voluntary payment for a loss that was not actually included in the coverage that American Liberty provided McGuire and that a volunteer is not entitled to recover through a subrogation claim. The appellee asserts that American Liberty's "builder's risk" coverage ceased when the premises were accepted, or in the alternative, that since the builder's risk policy contained an "excess insurance" clause, any insurance paid under the builder's risk policy was voluntary.
With regard to the appellee's point concerning the cessation of coverage upon the purchaser's acceptance, we note the maxim that ambiguous provisions in insurance policies are to be construed most strongly against the insurer, Life Ins. Co. ofGeorgia v. Miller, 292 Ala. 525, 296 So.2d 900 (1974). We cannot say as a matter of law that American Liberty would have prevailed under this cessation of coverage provision had McGuire brought an action against his insurer. The record is not sufficiently clear at this point as to whether Wilson had "accepted" this property within the meaning of the insurance policy, i.e., final acceptance as a vendee in possession, or whether he had accepted the property as a lessee under the lease provision inserted in the sales contract. This is a matter that will have to be resolved at a trial on the merits.
With regard to the "excess insurance" clause in American Liberty's builder's risk policy, this clause provides in pertinent part that:
 e. In case other valid and collectible insurance exists on any property hereby *Page 1302 
insured at the time and place of loss, the insurance under this policy shall be considered as excess insurance and shall not apply or contribute to the payment of any loss until the amount of such other insurance shall have been exhausted . . . . [emphasis added].
Without deciding whether this clause applies to insurance held by someone other than the named insured, we do not believe that there is other collectible insurance in this case insofar as the appellant, McGuire, is concerned. It is true that in a collateral declaratory judgment action, it was held that Wilson's homeowners insurer, Southern Guaranty, would have to defend Wilson and pay any judgment rendered against him arising out of this loss. However, the collectibility of this other insurance is contingent upon an ultimate determination that Wilson is liable to the appellants. Thus, American Liberty's payment to McGuire was not in derogation of its rights under the excess insurance clause so as to make American Liberty a volunteer.
The appellee cites Couch on Insurance 2d, § 61.54 (1966) at 270 in support of the proposition that subrogation is not permitted for volunteers even when the voluntary nature of the payment is subsequently determined in a judicial proceeding. In this same section, however, it is noted that "any doubt as to the applicability of this principle is construed in favor of the insurer and the nonexistence of a volunteer status." Couch,supra, at 271. The declaration of this principle is laudable and it is clearly intended to encourage insurers to pay their insureds for claimed casualty losses even where coverage is arguably questionable. Thus, the resolution of American Liberty's status as a volunteer was inappropriate in a summary judgment proceeding. We, of course, express no opinion as to whether American Liberty's payment may ultimately be determined to have been a voluntary payment, but we do hold that the record does not sustain such a finding at this point.
Finally, the appellee notes that subrogation is not a matter of strict right, but that subrogation is to be applied after a consideration of the facts of each case. Nixon, supra.
In this regard, it has been stated in 83 C.J.S. Subrogation § 2b, that
 subrogation is not strictly a remedy, but rather . . . an equitable principle through which the benefit of remedies is obtained. . . . Subrogation is closely akin to, if not a part of, the equitable principle of "restitution" and "unjust enrichment." (footnotes omitted)
At 83 C.J.S. Subrogation § 5a, the text states that subrogation "is applied where demanded by the dictates of equity, justice and good conscience. . . ."
In this case the insurer has paid a claim to its insured for a loss that was allegedly caused by a third party's negligence. Irrespective of fault, the third party has acknowledged that he bore the risk of loss and yet he seeks to avoid it by denying the insurer's subrogation claim.
We believe that although it is not clear that the appellant, American Liberty, will ultimately prevail in this case, summary judgment is an inappropriate vehicle for disposing of its claim at this stage.
It does, however, appear from the record that the appellant McGuire has no further pecuniary interest in the outcome of this litigation; therefore, the granting of the defendant's motion for summary judgment as to McGuire was proper. Rule 17 (a), ARCP.
AFFIRMED IN PART; REVERSED IN PART AND REMANDED.
TORBERT, C.J., and BLOODWORTH, FAULKNER and EMBRY, JJ., concur. *Page 1303