Crockett W. METCALF and Grace T. Metcalf, Appellants,

v.

Greta Helga BARTRAND, a/k/a Greta H. Bartrand, Appellee.

Greta Helga BARTRAND, a/k/a Greta H. Bartrand, Cross-Appellant,

v.

Crockett W. METCALF and Grace T. Metcalf, Cross-Appellees.

Nos. 1334, 1343.

Supreme Court of Alaska.

Nov. 30, 1971.

Marvin S. Frankel, of Robison, McCaskey, Strachan, Hoge, Richards & Frankel, Anchorage, for appellants and cross-appellees.

Raymond A. Nesbett, of Nesbett & Johnstone, Anchorage, for appellee and cross-appellant.

Before DIMOND, RABINOWITZ and CONNOR.

DIMOND, Justice.

## OPINION

Greta Helga Bartrand filed for a homestead near Big Lake in 1958. In March 1962, after spending about $5,500 on improvements, she received a patent to the land. In 1960 she purchased a 12-acre parcel of land across Knik Arm from Anchorage for $9,600. She paid $1,200 down and gave a deed of trust note for the balance.

Soon after the land purchase, Bartrand began to suffer financial hardships. Her health deteriorated and she had to have surgery. Her mother also became ill and Bartrand was contributing to the mother's support. In November 1961 she traveled to Denmark to tend her mother. While she was gone, her sign painting business suffered losses caused by a mistake in the listing of her business telephone.

Following her return to Alaska, Bartrand applied for a bank loan of $3,500 to save the business. The loan was denied. She then turned to her friend, Crockett

W. Metcalf. He refused to make a loan but did agree to the following arrangement:

On April 26, 1962, Bartrand executed a warranty deed to her Big Lake homestead to Metcalf. In return, Metcalf paid Bartrand $3,500 less legal fees, and executed a real estate contract to sell the same property back to Bartrand for $7,000 without interest, payable in three years.

As it happened, the proceeds of the transaction were not enough to repair Bartrand's financial predicament. After trying unsuccessfully to obtain a loan on her 12 acres across Knik Arm, she again turned to Metcalf. He agreed to give her $5,000 on the Knik Arm tract provided she clear the balance due on the deed of trust. After paying that balance and deducting legal fees, Metcalf gave Bartrand $2,674.50 in cash. Bartrand executed a warranty deed on the Knik Arm tract and Metcalf executed a repurchase contract selling the land back to Bartrand for $10,000 plus eight percent interest from May 20, 1964, payable in two years.

Bartrand was unable to meet the payment dates in the original agreements but she did keep the interest payments current through 1966. Metcalf granted numerous extensions to her, and paid some taxes on both parcels with the understanding between them that Bartrand was to repay him.

On August 9, 1967, Bartrand filed a petition in bankruptcy. While the petition did not reflect any interest in either of the parcels of land, Bartrand did occupy her homestead on various occasions, and always considered herself the owner of that land.

In 1969 Bartrand secured a buyer for the homestead. However she withdrew when a title search revealed that an unbeknown "Lutz" had an interest in the land. At trial it was disclosed that Metcalf had sold that tract in 1969 for $16,000 to a party of that name.

In May 1969, Metcalf filed a foreclosure action in superior court claiming that Bartrand was in default of payments on the $7,000 and the $10,000 contracts. At trial Metcalf testified that the deals were not loans but rather sales and repurchases. Bartrand testified that Metcalf knew that the transactions were loans, and that her intent was to borrow the money and not sell her property.

The trial court found that the intent of the parties was to make a loan; that those loans were usurious; and that the $2,812.08 interest paid by Bartrand on both contracts should be regarded as consideration for the various extensions granted by Metcalf. The court decreed Bartrand legal owner of both parcels of land, subject to mortgages in the amounts of the principal sums of the loans plus the taxes paid by Metcalf. The court ordered Metcalf to execute and deliver warranty deeds to both parcels if Bartrand should pay off the mortgages within 60 days. Otherwise, Bartrand was to be considered to have abandoned her interest. Attorney's fees were awarded to Bartrand. She has since tendered full payment to Metcalf.

Metcalf has appealed from the court's findings that the transactions were mortgages at usurious rates of interest. Metcalf further claims that the court erred in the granting of attorney fees to Bartrand. Bartrand has cross-appealed claiming error in the failure of the trial court to credit the interest paid against the principal on the usurious loans.

1. USURY

The Alaska usury statute, AS 45.45.040, reads as follows:

If in an action brought on a contract, the court determines that a rate of interest has been contracted for greater than is authorized by §§ 10–70 of this chapter, either directly or indirectly, in money, property, or other valuable thing, or that a gift or donation of money, property, or other valuable thing has been made or promised to be made to a lender or creditor, or to a person for him, directly or indirectly, by the borrower or debtor, or a person for him, the design of which is to obtain for money so loaned, or for

debts due or to become due, a rate of interest greater than that specified by §§ 10–70 of this chapter, the rate of interest is usurious and works a forfeiture of the entire interest on the debt. The court shall give judgment for the amount due, without interest, on the sum loaned or the debt contracted, against the defendant and in favor of the plaintiff and against the plaintiff for costs of action, whether the action is contested or not.

█ In usurious transactions the parties are usually trying to disguise what they have done. It is to be expected that they will try to mold their deal so that it appears to be a legitimate sale and repurchase. The presumption that a deed absolute is complete on its face, and that clear and convincing evidence is needed to overcome that presumption, is simply not applicable when it appears that there is usury involved.[1] As stated in Wilcox v. Moore,

[A] court must look squarely at the real nature of the transaction, thus avoiding, so far as lies within its power, the betrayal of justice by the cloak of words, the contrivances of form, or the paper tigers of the crafty. We are interested not in form or color but in nature and substance.[2]

The appellant argues that the trial court based its finding that the deeds operated as security instruments solely upon Bartrand's testimony as to her intent. He contends that the law requires mutual intent in order to have an absolute deed operate as a security instrument.

The very case upon which he relies for this contention, Rizo v. Macbeth, 398 P.2d 209 (Alaska 1965), stresses that there are many factors which must be considered.[3] Those factors are: (a) when compared to purchase and improvement costs, the consideration was clearly inadequate; (b) Bartrand retained possession; (c) the conduct of the parties before and after the execution of the instrument is consistent with the view of the deed as a security instrument—especially with regard to the irregularities discussed above and with regard to Metcalf's failure to foreclose; (d) Bartrand's financial condition was desperate; (e) while Metcalf paid the taxes, there was testimony to the effect that Bartrand expected to repay him; (f) while revenue stamps were affixed to the deed to the Big Lake property, a falsified amount was affixed.

In *Rizo* the decision was against a finding of usury because in that case we found all of the evidence "highly conflicting."[4] Here the testimony of the parties was highly conflicting, but the other evidence substantiates the finding of the trial court. Under the standard of review defined in Alaska Foods, Inc. v. American Manufacturer's Mut. Ins. Co., 482 P.2d 842 (Alaska 1971), the trial court's finding on intent should not be disturbed.

As for the intent to evade the usury law, the authorities are in near unanimous agreement with Bartrand and the court in Britz v. Kinsvater, 87 Ariz. 385, 351 P.2d 986 (1960), that unless the applicable statute requires knowledge or willfulness (which AS 45.45.040 does not) then

[t]he intent required to constitute usury is not necessarily a consciousness of the illegality of the transaction. It is sufficient that the loan contract unequivocally calls for an excessive rate of return on

1. Kawauchi v. Tabata, 49 Haw. 160, 413 P.2d 221 (1966); C.I.T. Corp. v. Edwards, 418 P.2d 685 (Okl.1966); Baske v. Russell, 67 Wash.2d 268, 407 P.2d 434 (1965); Britz v. Kinsvater, 87 Ariz. 385, 351 P.2d 986 (1960); Wilcox v. Moore, 354 Mich. 499, 93 N.W.2d 288 (1958); Orlando v. Berns, 154 Cal.App. 2d 753, 316 P.2d 705 (1957); Saunders v. Resnick, 142 Pa.Super. 457, 16 A.2d 676 (1940).

2. Wilcox v. Moore, *supra* 93 N.W.2d n. 1, at 291.

3. Rizo v. Macbeth, 398 P.2d 209, 212 (Alaska 1965).

4. *Id.*

the indebtedness. In such case, the intent to exact usury is presumed.[5]

■ Looking not to the form but to the substance of the transactions, there can be little doubt but that they come within the broad terms of the Alaska usury law. We hold that the trial judge properly considered evidence beyond the deed absolute, and that there was sufficient evidence to support his finding that the transactions were usurious.

## 2. STRICT FORECLOSURE

■ Metcalf contends the court erred in denying strict foreclosure. He argues that the court committed a double error in deciding that the appellee's standing was equivalent to that of a contract purchaser who has made a substantial equity payment, and in proceeding to decree specific performance to the appellee. In Land Development, Inc. v. Padgett, 369 P.2d 888 (Alaska 1962) we held that the test for an equity decree of specific performance involves weighing the potential loss to the buyer on forfeiture against the potential loss to the seller on strict foreclosure. We also noted in that case that the determination of the equities rests in the sound discretion of the trial judge.[6]

We cannot agree with Metcalf that under the trial court's degree of specific performance he suffers any losses but his illegal, excessive profits. Since AS 45.45.040 works an automatic forfeiture of profits under a usurious contract, there can be no legitimate claim of loss of profits at this late date. Because we find that the trial judge properly exercised sound discretion in his determination of the equities, we need not consider Metcalf's alternative contention that the doctrine of forfeiture does not apply here because the transaction was a mortgage and not a sale.

■ Metcalf urges that Bartrand should be denied equitable relief because of her delay in raising the defense of usury. But AS 45.45.040 makes no requirement that the victim of the usury take affirmative action. Indeed, that section contemplates that the aggrieved party will be the defendant. The appellant would better count his blessings, for the appellee could have had a double recovery under the statute if she had brought her own action within two years of her last payment of interest.[7]

## 3. INDISPENSABLE PARTY

Metcalf argues that the trial court erred in ordering him to execute and deliver a warranty deed for the Big Lake land because he had already sold the property and his grantee was an indispensable party not before the court. Bartrand answers, *inter alia*, that the issue was not raised at trial and that when her counsel asked Metcalf on cross-examination if he had sold either parcel, Metcalf's own counsel objected.

In State Dept. of Highways v. Crosby, 410 P.2d 724 (Alaska 1966) we said

An indispensable party is one whose interest in the controversy before the court is such that the court cannot render an equitable judgment without having jurisdiction over such party. The determination of indispensability or lack of it involves a discretionary balancing of interests. On the one hand, consideration must be given to the possibility of rendering a judgment that will have an adverse factual effect on the interests of persons not before the court, and to the danger of inconsistent decisions, the desire to avoid a multiplicity of actions, and a reluctance to enter a judgment that will not end the litigation. On the other hand, consideration must be given to the desirability of having some adjudication if at all possible rather than none, leav-

5. Britz v. Kinsvater, 87 Ariz. 385, 351 P.2d 986, 991 (1960) [footnotes omitted]. For references to abundant case law, *see* 91 C.J.S. Usury § 14, at p. 585 n. 60 (1955, and Supp. 1971); 45 Am.Jur. 2d, Interest and Usury § 160 (1969).

6. Land Development, Inc. v. Padgett, 369 P.2d 888, 890 (Alaska 1962).

7. AS 45.45.030.

ing the parties before the court without a remedy because of an "ideal desire to have all interested persons before the court." [8]

More recently, in Padgett v. Theus, 484 P.2d 697 (Alaska 1971), we noted that when the indispensable party issue is not raised until the case has reached the appellate level, the court must weigh, in addition to the factors set forth in *Crosby,*

> the ramifications of appellants' failure to raise the indispensable party issue at trial, the significance of the fact that after trial a judgment, binding upon [the parties] was entered, and the justice and feasibility of fashioning appropriate relief at the appellate level in order to lessen or avoid any substantial prejudice to [the third party] flowing from the trial court's judgment.[9]

■ In *Padgett* we held that the appellants were precluded, by reason of their failure to raise the issue at the trial level, from asking the court to weigh such factors as the dangers of multiple actions and inconsistent judgments.[10] We reach the same result here. Only Metcalf, and not Bartrand, knew the actual identity of the third person and the extent of his interest, yet he did not raise the issue and his counsel objected to the efforts on the part of counsel for Bartrand to question Metcalf on the matter.

There has been a full trial on all the issues between the parties. Bartrand and the public have a strong interest in the preservation of the judgment of the trial court.[11] The appellee should not be put to another trial simply because issues which can be settled in an independent action might ideally have been settled in the original action. And the public has an interest in avoiding the unnecessary expenditure of time and money involved in a new trial unless that trial is necessary.

■ While the third party in this case did not appear as a witness, he is held to constructive knowledge of the interest of Bartrand in the Big Lake land by virtue of the recordation of the repurchase contract.[12] He cannot be regarded as an innocent bystander whose rights have been prejudiced without his knowledge.

Under the test of *Crosby* as modified by *Padgett*, we hold that the trial court did not err in ordering Metcalf to execute and deliver a warranty deed to the Big Lake property.

## 4. ABANDONMENT

Metcalf relies on Jameson v. Wurtz, 396 P.2d 68 (Alaska 1964), to assert that specific performance of a land contract should not be ordered when there is evidence of abandonment. He contends that the appellee's failure to list any interest in the parcels of land at the time she filed for bankruptcy in 1967 is such evidence, and that therefore the trial court erred in ordering specific performance of the repurchase contracts.

■ In *Jameson* we held that there was no evidence of abandonment despite the failure of the purchaser to pay the taxes and to keep the property insured, thus permitting foreclosure of the tax lien on the property and despite the fact that there had been a voluntary surrender.[13] Here there was evidence to the effect that the appellee considered the property to be hers and that she regarded it as her "pension". The trial court cannot be said to have been "clearly erroneous" in finding that Bartrand did not abandon the property, which is the test or standard we applied in *Jameson.*[14]

8. State Dept. of Highways v. Crosby, 410 P.2d 724, 725–726 (Alaska 1966) [footnotes omitted].

9. Padgett v. Theus, 484 P.2d 697, 702 (Alaska 1971). *See also* Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 88 S.Ct. 733, 19 L. Ed.2d 936, 946 (1968).

10. Padgett, *supra* 484 P.2d n. 9, at 702.

11. *Id.,* at 702–703.

12. AS 34.15.320(a) (2); AS 34.15.260 (a) (3).

13. Jameson v. Wurtz, 396 P.2d 68, 73 (Alaska 1964).

14. *Id.*

## 5. NEW TRIALS

■ Metcalf's motion for a new trial on the basis of newly discovered evidence was denied by the trial court. On appeal he argues that the newly discovered evidence of similar transactions by Bartrand on prior occasions is material to show the specific intent of Bartrand to treat such transactions as sales and contracts to repurchase rather than as loans.

In Montgomery Ward v. Thomas, 394 P.2d 774 (Alaska 1964) we set out the requirements which must be met for a new trial to be granted on the basis of newly discovered evidence. We held that evidence

(1) must be such as would probably change the result on a new trial; (2) must have been discovered since the trial; (3) must be of such a nature that it could not have been discovered before trial by due diligence; (4) must be material; (5) must not be merely cumulative or impeaching.[15]

In this case there is some question whether the evidence is newly discovered, and whether due diligence would not have disclosed the transactions during trial. Bartrand testified at trial concerning one of the prior transactions.

The evidence does not appear to be either material or such as would likely change the result on a new trial. Usury laws are designed to protect the necessitous borrower. That the borrower would turn to other sources of funds, even at usurious rates, is further evidence of his need for protection. Bartrand allegedly advised those persons with whom she entered into the prior transactions that a capital gain would result for them. This would provide further inducement for them to enter into the transactions.

As we stated in Ahlstrom v. Cummings, 388 P.2d 261 (Alaska 1964),

[t]he matter of granting or refusing a new trial rests in the sound discretion of the trial judge. We shall not interfere with the exercise of his discretion except in the most exceptional circumstances and to prevent a miscarriage of justice.[16]

Here the trial judge was well within his discretion in refusing to grant a new trial.

## 6. ATTORNEY FEES

The trial court awarded attorney fees to Bartrand in the amount of $900. Metcalf contends that since he brought suit for foreclosure and since the court ordered that Bartrand's interests in the properties be foreclosed unless she should pay the amount borrowed, he is the prevailing party. As the prevailing party, Metcalf argues that he should have been awarded attorney fees.

■ The finding of the trial court was that the transaction was usurious under AS 45.45.010, 45.45.020. AS 45.45.040 provides that "[t]he court shall give judgment . . . against the plaintiff for *costs of the action* . . . ." [Emphasis added.] That section expressly modifies Civil Rule 82 with regard to attorney fees and is controlling in this case. We hold that the trial court properly awarded these fees to Bartrand.

## 7. INTEREST

On her cross-appeal Bartrand contends that AS 45.45.040 requires that the interest paid on the contract be credited against the principal due on a usurious loan, and that the trial court erred in not allowing this deduction from the principal owed.

■ The statute unequivocally requires that a usurious rate of interest "works a forfeiture of the *entire* interest on the debt." [17] The interest payments for the extensions were calculated at a rate of eight percent on the repurchase prices. While

---

15. Montgomery Ward v. Thomas, 394 P.2d 774, 776 (Alaska 1964).

16. Ahlstrom v. Cummings, 388 P.2d 261, 262 (Alaska 1964) [footnotes omitted].

17. AS 45.45.040 [emphasis added].

this rate is not in and of itself usurious, the "principal" to which it was applied contains a large component of usurious interest. Metcalf had no right to 50 percent of each of the repurchase prices since the interest was forfeited under AS 45.45.040. Since interest at eight percent on the repurchase prices would be at a rate of 16 percent on the original amounts loaned, that interest was usurious as in excess of the legal rates of interest provided for in AS 45.45.010, 45.45.020. Thus, the statute demands that Metcalf should have forfeited that interest, and it should be credited against the principal due him from Bartrand. We modify the judgment to the effect that in order to avoid foreclosure the appellee should repay the original amount loaned, increased by the amount of taxes Metcalf paid on the property, and decreased by the amount of interest Bartrand paid to him. As so modified, the judgment is affirmed.

BONEY, C. J., and ERWIN, J., not participating.