## EDWARD L. GILLES v. LELAND C. SPROUT AND ANOTHER.

196 N. W. 2d 612.

March 31, 1972—No. 43134.

*Bentley & Christianson* and *William L. Christianson,* for appellant.

*Dingle & Krieger* and *Harold Krieger,* for respondents.

ROGOSHESKE, JUSTICE.

This is an equitable action for specific performance of an executory contract for the sale and purchase of real estate. The appeal is from a post-trial order denying relief to plaintiff-vendee. The trial court determined on stipulated facts that plaintiff-vendee, in possession of real estate under an executory sales contract which was silent with respect to the obligation of insurance, was not entitled to have credited in satisfaction of the balance of his purchase price the proceeds of insurance paid to the vendor upon a total loss by fire of a dwelling located upon the land, the insurance policy having been procured by, and at the expense of, the vendor. We disagree with the trial court's conclusion and reverse.

The essential facts, so far as they are revealed by the record, are stipulated. On October 5, 1967, through a real estate broker,

defendants-vendors, Leland and Mary Sprout, "sold and agreed to convey" to plaintiff-vendee, Edward Gilles, by a written "EARNEST MONEY CONTRACT OF SALE" 40 acres of land upon which was located a dwelling house. The contract downpayment of $200 on the purchase price of $3,250 was paid into an escrow account of the broker pending examination of the abstract of title, with the balance to be paid on or before November 10, 1967, "or as soon thereafter as a Warranty Deed conveying a marketable title to said land is tendered." The contract further gave plaintiff possession of the premises on November 10, 1967, and provided that the vendors were to have a survey made, the expenses of which were to be shared by the parties.

Plaintiff went into possession at least by November 10, but for some reason not made a part of the record, payment of the balance of the purchase price was not made nor the sale completed on November 10. Presumably this was because the warranty deed was not tendered or because payment was, by agreement, held in abeyance pending completion of the survey. In any event, while the contract remained executory on February 11, 1968, the dwelling was accidentally destroyed by fire.

The contract was silent as to which of the parties must procure or maintain insurance on the dwelling. However, defendants, prior to the execution of the contract, did have what we assume was a $3,500 stated-value policy of fire insurance, which they maintained in force after execution of the sales contract. The policy provided that the loss would be payable to the Ben Gilmore estate and the Federal Housing Administration (mortgagees) and to defendants as their interest would appear if the dwelling should be destroyed. On February 27, 1968, the entire insurance proceeds were paid, on behalf of the vendors, to their mortgagees in satisfaction of the mortgage debt.

Plaintiff, now residing in a trailer house, continued in possession of the premises. Electing to specifically enforce the contract, plaintiff commenced this action seeking to have the insurance proceeds applied in satisfaction of the balance due on

the contract. Defendants, by their answer and counterclaim, alleged that plaintiff had no right or interest in the insurance policy or its proceeds, that the risk of loss was on plaintiff, and that he had breached the contract. Their prayer for relief asked that plaintiff either be compelled to pay the balance of the purchase price or that the contract be rescinded. The trial court denied relief to plaintiff and ordered rescission of the contract on the ground that plaintiff had not secured a loan for payment of the balance of the purchase price as contemplated by the contract.

The determinative issue, as we see it, is: Where an executory contract for the sale of improved real estate has no provision for insurance against loss by fire and the improvement is accidentally destroyed by fire while the vendee, pursuant to the contract, is in possession pending its performance by the parties, should the insurance proceeds covering the loss collected by the vendor under a fire insurance policy, procured by him at his expense, be applied to reduce the balance of the purchase price owed by the vendee?

While we have not before directly faced the issue presented, numerous other states have, and the majority generally holds that where the vendee must bear the loss of an accidental destruction of the property pending completion of the sale, the vendor must credit the insurance proceeds to the contract price absent any contractual agreement to the contrary. See, Annotation, 64 A. L. R. 2d 1402; Note, 39 Minn. L. Rev. 93, 101; 55 Am. Jur., Vendor and Purchaser, § 403. This court has at least declared, although not ruled, in favor of the majority rule. In Cetkowski v. Knutson, 163 Minn. 492, 204 N. W. 528 (1925), the vendee fraudulently procured the vendor-plaintiff's property under a contract for deed, took possession, and obtained insurance. A dwelling located on the property was accidentally destroyed while the contract for deed was in effect and before the vendor sought rescission. The vendor was awarded rescission and permitted to recover the insurance proceeds, and the insur-

ance company appealed. Having ruled that the vendee had an insurable interest in spite of the fact the vendor could rescind the conveyance, the court determined that the vendee held the insurance proceeds in trust for the vendor. In short, the court held that the fraud by the vendee triggered rescission and that plaintiff was entitled to the proceeds "as a substitute in equity" for the destroyed dwelling, which the vendee had a duty to restore to the vendor upon the rescission of the contract. 163 Minn. 496, 204 N. W. 530. In coming to that conclusion, the court acknowledged the rule that an insurance contract is personal between the insurer and insured but reasoned that this did not prohibit the *proceeds* of the policy to be held in trust for the vendor under the circumstances of that case. Significantly, the court also noted in support of its decision that if the vendor had an insurance policy on the property accidentally destroyed, and the contract for deed contained no provision about insurance, the vendor would have to apply the insurance proceeds to the purchase price as a matter of equity.

Defendants here argue that Cetkowski must be limited to its facts and that without the fraud and resultant rescission, the *vendor* could not demand that proceeds of insurance carried by the vendee be credited to the purchase price. Admittedly, this court has been reluctant to equate insurance proceeds with the property insured, and it has viewed the insurance contract as a personal contract between the insured and the insurer in other contexts.[1] It may thus be argued that absent the vendee's fraud, the result in Cetkowski might not have been the same.

It is true that the cases which hold the vendor must apply his insurance proceeds to the purchase price do not suggest as general a pattern as is intimated in the authorities noted. In each case, the decision rests upon the court's response to the facts. In some cases, the contract is not silent as to insurance,

---

[1] See, Culbertson v. Cox, 29 Minn. 309, 13 N. W. 177 (1882); Closuit v. Mitby, 238 Minn. 274, 56 N. W. 2d 428 (1953); Hayfield Farmers E. & M. Co. v. New Amsterdam Cas. Co. 203 Minn. 522, 282 N. W. 265 (1938).

Gunsch v. Gunsch, 71 N. W. 2d 623 (N. D. 1955), and in others the purchaser must complete the purchase before being given a credit by the vendor for the insurance proceeds he has retained, Russell v. Elliott, 45 S. D. 184, 186 N. W. 824, 22 A. L. R. 556 (1922). In another case, the fact that the vendor kept the insurance policy as collateral security for the balance due was deemed crucial. Mattingly v. Springfield F. & M. Ins. Co. 120 Ky. 768, 83 S. W. 577 (1904). Regardless of the distinctions that can be drawn from the cases, for the most part the courts attempt to equitably adjust the proceeds to the status of the parties' interest, which must be regarded as fixed at the time of the loss. It may be noted though that rationales of this sort, attempting to justify an equitable result, have been dismissed out of hand by the court in Brownell v. Board of Education, 239 N. Y. 369, 374, 146 N. E. 630, 632 (1925), where it is stated, "These reasons may savor of layman's ideas of equity, but they are not law." And in essence, this statement poses the problem: Should we follow the law of the personal contractual relation between vendor and his insurer, or should we, upon equitable principles, attempt to balance the vendor's and vendee's rights to insurance proceeds realized from destroyed property in which both parties had an insurable interest?

Looked at as a practical matter, there is no manifest disruption of the law if the equitable result is favored, especially if the vendee is required to reimburse the vendor for his cost of maintaining the insurance during the vendee's possession and the insurance proceeds are credited to the unpaid purchase price only to the extent of the market value of the dwelling immediately before the loss. Here, defendants had carried insurance on the property, presumably as required by their mortgage. The property was sold at a value that met the mortgage demand. If the property had not been destroyed, the purchase price would have satisfied the mortgage; having been destroyed, the insurance proceeds satisfy the mortgage. If he does not credit the proceeds to the balance due, the vendor profits by a fortuitous event, thus

unreasonably forcing the vendee to rescind even though, as here, he elects to compel specific performance presumably because the land, and not the dwelling upon it, was the motivating reason for his purchase. And even if the proceeds are credited to the purchase price, the burden of the loss in the sense of replacing the dwelling rests on the vendee. It does not answer the problem to say the vendee could have carried insurance. The parties both have insurable interests in the property which are at best difficult to allocate out of the total property. Without contractual agreement or other evidence of understanding, it is difficult to say who should have carried the responsibility under the circumstances of this case, where the original intention to complete the sale 1 month after the earnest money was paid may explain why the vendee did not procure insurance. Had the delay in completion been anticipated, the standard and approved provisions allocating insurance proceeds after a fire loss would undoubtedly have been included in this executory contract.[2]

The foregoing analysis is but an application of an ancient maxim of equity jurisprudence, namely: "Equity regards and treats that as done which in good conscience ought to be done." 2 Pomeroy (5 ed.) Equity Jurisprudence, §§ 364, 368, 372; see, Ames v. Richardson, 29 Minn. 330, 13 N. W. 137 (1882). While the legal relations between vendor and his insurer and vendor and his vendee are personal, beneath this external form the essence of the agreement before the sale is completed is that the purchase price ought to be paid to the vendor and the land ought to be conveyed to the vendee. Where the final acts contemplated by the parties can be achieved by requiring that the proceeds be

---

[2] See, 29 M. S. A. 370, Uniform Conveyancing Blanks, No. 54; Minn. St. 507.09, 507.13. Such provisions, undoubtedly based upon equitable principles which we believe should apply in this case, required the vendee to keep the improvements insured for at least a stated amount, and in case of loss, the proceeds are paid to the vendor to apply on the balance due on the contract, with any surplus to be paid over to the vendee as his interest shall appear.

60

applied to reduce the purchase price, it ought to be regarded as done. The prejudice to the vendor to the extent that he incurred the cost of maintaining the insurance, or that the market value of the dwelling is less than the insurance proceeds payable under the policy and less than the balance due on the contract, can easily be erased by the parties through agreement or by the court on remand. Only so much of the proceeds should be applied toward the unpaid purchase price as represents the market value of the dwelling at the time of the loss, and a reduction from such amount should also be made to reimburse the vendor for the cost of maintaining insurance on the dwelling for the period when the vendee was in possession, during which the risk of loss was on him.[3]

Reversed and remanded.

MR. JUSTICE TODD, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.

---

[3] We are aware that the parties stipulated that "if the plaintiff is awarded the land in this particular lawsuit, that the defendant shall give him a deed and be reimbursed for the amount of real estate taxes that he has paid in the interim period of time, and that he will be further allowed to retain the $200.00 down payment as expenses in the matter." If, in the light of our disposition, the parties still desire to adhere to that stipulation, we would see no objection to a final disposition of this dispute without further hearing before the trial court.