Jack J. MORAN, Appellant,

v.

KENAI TOWING AND SALVAGE, INC.,
Appellee.

KENAI TOWING AND SALVAGE, INC.,
Cross-Appellant,

v.

Jack J. MORAN, Cross-Appellee.

Nos. 1924, 1934.

Supreme Court of Alaska.

June 26, 1974.

Stanley P. Cornelius, Anchorage, for appellant and cross-appellee.

Warren W. Matthews, Jr., of Matthews, Dunn & Baily, Anchorage, for appellee and cross-appellant.

Before RABINOWITZ, C. J., and CONNOR, ERWIN, BOOCHEVER and FITZGERALD, JJ.

## OPINION

CONNOR, Justice.

This appeal presents a dispute over the disposition of the proceeds from an insurance policy following a fire loss.

In 1968 Kenai Towing and Salvage, Inc., was the owner of certain improved real property in the vicinity of Kenai, Alaska. On the property was a building which had been erected by Kenai Towing & Salvage, Inc., at its own expense. The company was in financial difficulty. It approached Jack Moran for a loan. The parties agreed that as security for the loan Kenai would convey title to the real property to Moran, and Moran would then lease the property to Kenai with an option to purchase. This arrangement would enable Kenai to reobtain the property when the lease obligations had been fulfilled. The initial loan occurred in September of 1968. Including closing costs, it was in the amount of $11,586.38. Kenai executed a warranty deed conveying title to Moran. Moran executed a lease with an option to purchase in favor of Kenai; the monthly payments were to be $300, with each payment fully credited to the purchase price. The lease was dated September 4, 1968; the warranty deed was dated September 20, 1968.

Thereafter more money was sought by Kenai, and Moran lent an additional $7,515.88. The parties terminated the earlier lease with option and entered into a new ,.lease with a purchase option dated October 24, 1968. This "lease with option" bound Kenai unconditionally to pay $500 a month for five years, commencing November 1, 1968. It also bound Moran unconditionally to convey title to Kenai upon receipt of the last lease payment. By August 11, 1969, the total paid under both leases was $5,100.

On July 13, 1969, a fire totally destroyed the building located on the real property.

Under the October 24, 1968, lease Kenai was to maintain fire insurance on the building at its own expense, in an amount of at least $60,000. The precise language of this clause in the lease was:

"During the term of this lease, lessees shall, at their own expense, maintain fire insurance covering the interest of the lessor in the demised premises in an amount not less than Sixty Thousand Dollars ($60,000.00)."

Kenai was unable to pay for the insurance. It was agreed that Moran would do so, and that Kenai would reimburse Moran therefor. The total annual premiums for the first year were $2,029.

The parties had intended the sale with lease-back transaction to be a method of securing repayment of the $19,767.26 lent by Moran to Kenai. Moran himself believed the property to be worth between $75,000 and $100,000. He had evinced no interest in buying the property as a permanent owner, and no negotiations had taken place between the parties as to an absolute sale of the property.

After the fire a dispute arose between the parties over the disposition of the insurance proceeds. Moran claimed entitlement to the entire amount of the insurance proceeds. Kenai took the position that Moran was entitled to the proceeds in an amount not exceeding the amount loaned, plus fire insurance premiums paid, less a reduction because of usury.

Kenai brought a declaratory judgment action against Moran. The fire insurers paid $52,500 into the registry of the court as the agreed amount of insurance payable on the loss. The case was tried by the court, and ultimately a judgment was entered which provided that from the fire insurance proceeds Moran should be paid $19,767.26, with interest at 8 percent plus the insurance premiums paid by him, less payments received, and that Kenai should be paid the balance of the proceeds, $33,471.67. Kenai was also awarded costs and an attorney's fee.

Moran appeals from the judgment, claiming various errors committed by the superior court. Kenai cross-appeals, claiming that the court erred in failing to find that the loan from Moran was usurious.

Moran argued in the trial court that the transaction was purely a sale. On appeal, however, Moran assumes, arguendo, that Kenai had an equitable interest in the premises. He argues that a mortgagee, who procures fire insurance on mortgaged premises, is entitled to the proceeds of the insurance in the event of a loss. He supports his argument by citations to 5 Couch, Insurance, Sec. 29:69 (2d ed. 1960), and Osborne, Mortgages, Sec. 137 (2d ed. 1970). This rule, as these authorities are careful to note, however, applies only where the mortgagee had no obligation to pay for the insurance premiums, which is not the situation with which this appeal is concerned.

We must first observe that the "lease with purchase option" in this case is really a device to secure repayment of a debt. It is no different functionally than a mortgage or contract for the sale of land. Hervey v. Rhode Island Locomotive Works, 93 U.S. 664, 23 L.Ed. 1003 (1877); McKeeman v. Commercial Credit Equipment Corp., 320 F.Supp. 938 (D.Neb.1970); American Can Co. v. White, 130 Ark. 381, 197 S.W. 695 (Ark.1917).

We are dealing with a situation in which a person in the position of a mortgagor is obliged to furnish insurance on the premises, but fails to do so. The mortgagee thereafter does provide insurance under circumstances which oblige the mortgagor to reimburse the mortgagee for the cost thereof. A loss then occurs. How should the proceeds be distributed?

The great weight of authority answers that the mortgagee may satisfy his secured debt from the proceeds, but if the indebtedness does not exhaust the proceeds,

the balance shall be paid to the mortgagor. Were the rule otherwise, the mortgagee would be unjustly enriched at the expense of the mortgagor, who bears the ultimate burden of paying for the insurance. The purpose of requiring insurance coverage in such instances is to protect the integrity of the asset which is hypothecated to the mortgagee to secure repayment of the underlying debt. Beyond that the mortgagee cannot fairly ask for more.

■ Although insurance policies are personal contracts between the insured and the insurer, which do not attach to the property, the proceeds may be impressed with a trust in favor of one other than the insured. Since the burden of loss rests with the vendee pending completion of the sale, the proceeds must be credited to the purchase price. Alabama Farm Bureau Mutual Insurance Service, Inc. v. Nixon, 268 Ala. 271, 105 So.2d 643, 646 (1958); Gilles v. Sprout, 293 Minn. 53, 196 N.W.2d 612, 613–614 (1972). To hold otherwise would enable the vendor/mortgagee to get more than he bargained for, while the vendee/mortgagor would get less since he has neither the building nor its value. Such a result would go so far as to give the vendor a direct interest in the destruction of the property. The court in Bruce v. Jennings, 190 Ga. 618, 10 S.E.2d 56, 57 (1940), found the rule to be as follows:

"It is the general rule that, where the purchaser goes into possession under a binding executory contract for the sale of improved realty which the seller is able to convey, but where, before the transfer of the legal title is consummated, the improvements are destroyed by fire without the fault of either party, the loss falls on the purchaser as the owner of the equitable title. [citations omitted] If in such a case the property was insured by the seller, he holds the insurance money which he may collect on the bargained property as trustee for the purchaser, subject, however, to his own claims for any unpaid purchase-money plus the insurance premiums. [citations omitted]" [1]

We must adhere to the settled rule, as we have not been presented with any reasons why it should not be applied. Accordingly, we affirm the holding of the superior court to the extent that it requires application of the proceeds first to discharge the indebtedness owing to Moran, with the balance awarded to Kenai. In this respect there was no error.[2]

■ Moran next asserts that the complaint fails to state a claim on which relief could be granted. The complaint alleges ownership of the property, the loan from Moran to Kenai, the occurrence of the fire, a dispute over the insurance proceeds, and it prays for a resolution of the dispute. It satisfies all of the requirements of Civil Rule 8(a).[3] The pretrial order sets forth the claims of Kenai in a clear manner. Moran's argument is without merit. We find no error.

■ Moran seems to argue that the court should have decreed strict foreclosure in his favor, because no payments

1. *In accord*, Alabama Farm Bureau Mutual Insurance Service, Inc. v. Nixon, 268 Ala. 271, 105 So.2d 643 (1958); Brady v. Welsh, 200 Iowa 44, 204 N.W. 235 (1925); *Gilles v. Sprout*, 293 Minn. 53, 196 N.W.2d 612 (1972); Russell v. Elliott, 45 S.D. 184, 186 N.W. 824 (1922).

2. Moran alludes to AS 21.42.040, which provides:
   "*Interest of named insured.* When the name of the person insured is specified in a policy insuring property the insurance can be applied only to his own proper interest."

This point was not raised in the trial court. Because the insurers have paid the policy proceeds into court, we are not presented with a dispute between them and a policyholder. While the statutory section quoted governs insurance contracts, it does not govern the equitable relationship between the parties to this appeal. We will not consider the point further.

3. *See* Miller v. Johnson, 370 P.2d 171 (Alaska 1962); and Shannon v. City of Anchorage, 429 P.2d 17 (Alaska 1967).

were made to him by Kenai after August of 1969. We think the trial court properly denied foreclosure in the circumstances. The evidence reveals that Kenai had made a substantial contribution to the improvement of the property through its own efforts and expenditure of funds, apart from any loan from Moran. Moran himself believed the property to be worth between $75,000 and $100,000, far in excess of the amount of the loan. In our opinion, the trial court correctly acted to protect Kenai's equity in the property under the principles set forth in Moran v. Holman, 501 P. 2d 769 (Alaska 1972); Metcalf v. Bartrand, 491 P.2d 747 (Alaska 1971); Land Development, Inc. v. Padgett, 369 P.2d 888 (Alaska 1962); and McCormick v. Grove, 495 P.2d 1268 (Alaska 1972). Tender of performance is no problem in this case because when the judgment is carried out, Kenai's obligations to Moran will be fully performed.

■ Moran claims that the court erred in allowing a motion for withdrawal of his previous counsel, which was granted January 12, 1973. He asserts that this was in violation of Civil Rule 81(d), which provides:

"(d) *Withdrawal of Attorney.* An attorney who has appeared for a party in an action or proceeding may be permitted to withdraw as counsel for such party only as follows:

(1) For good cause shown, upon motion and notice of hearing served on the party not less than 10 days before the time specified for the hearing; or

(2) Where the party has other counsel ready to be substituted for the attorney who wishes to withdraw; or

(3) Where the party expressly consents in open court or writing to the withdrawal of his attorney."

His complaint is that his attorney did not serve him with a notice of hearing on the motion, as required by Civil Rule 81(d)(1). However, in an affidavit dated September 8, 1972, which was filed in this case, Moran states that he had discharged his attorney by means of a letter. This means that Civil Rule 81(d)(3) would be applicable. We find no prejudice to Moran and no reversible error.

■ Next, Moran claims that the findings of fact and conclusions of law were sent to him on January 9, 1973, and that the findings, conclusions, and judgment were signed on January 12, 1973, thus depriving him of the necessary five days within which to object to the proposed findings and conclusions as permitted by Civil Rule 78(a) and (b).[4] This does not tell the whole story, however.

On June 8, 1972, the court announced its decision as to the main issue in the case, determining that Kenai was the equitable owner of the property and that the lease arrangement was merely a method of securing repayment of a loan. At the same time the court found that usury had not been proven. The court directed the parties to attempt to agree on the amount to which each would be entitled. The parties were unable to agree on the disposition of the funds.

4. Civil Rule 78(a) and (b) provides:
    "(a) *Preparation and Submission—Service.* Unless otherwise ordered by the court, counsel for the successful party to an action or proceeding shall prepare in writing and serve on each of the other parties all findings of fact, conclusions of law, judgments and orders. Counsel for each of the parties so served shall promptly endorse on the original of each document either (1) an approval as to form, (2) a disapproval as to form, or (3) an acknowledgment of the date and hour of service.

    (b) *Objections.* Within 5 days after service of any of the documents mentioned in subdivision (a), a party may serve a written detailed statement of objections to any such document and the reasons therefor. If objections are served within the time specified herein, the court may thereafter require the attorneys interested to appear before it, or it may sign the document as prepared by counsel for the successful party or as modified by the court."

On June 27, 1972, Kenai submitted proposed findings of fact and conclusions of law and a proposed form of judgment, as well as a proposed partial judgment for which the court had earlier asked. Moran objected to plaintiff's proposed findings of fact and conclusions of law on July 12, 1973, and filed therewith a memorandum supporting his objections to the proposed judgment.

On August 1, 1972, the court entered the proposed partial judgment. On August 4, 1972, the court indicated its ruling as to disposition of the proceeds and directed that computations be made accordingly. Findings of fact and conclusions of law and a final judgment were entered in accordance with the court's directions on January 12, 1973. Thus, it appears that the court was merely acting within its authority to modify the documents which had been earlier submitted to it, as permitted by Civil Rule 78(b).

▪ Moran argues that the partial judgment of August 1, 1972, is void because the court did not at that time make the findings of fact and conclusions of law required by Civil Rule 52(a).[5] He argues that the judgment of January 12, 1973, was ineffective to correct this error.

This argument, however, overlooks the provisions of Civil Rule 54(b).[6] The Au-

gust 1, 1972, judgment was merely interlocutory in nature, and it was subject to revision by the court at any time up to the entry of a final judgment. The January 12, 1973, judgment incorporates the language of the earlier one and is supported with the necessary findings of fact and conclusions of law. Thus, no prejudice could flow from the lack of findings and conclusions to support the judgment of August 1, 1972. We find no error.

We now come to the question of usury. With respect to usury, the superior court made the following finding:

"Due to the nature of this transaction and the unusual language of the lease with purchase option, the Court finds that usury has not been proven."

In its cross-appeal, Kenai asserts that this finding is clearly erroneous.

▪ The loan in this case was in the amount of $19,767.26. It was to be repaid in monthly installments of $500, beginning November 1, 1968, and continuing for five years. The amount to be paid by Kenai to Moran was, therefore, $30,000, over a five year period. Even if one were to assume no reduction of principal until the end of five years, the rate of interest is more than 10 percent. A simple interest rate, with a constant reduction of principal, would be considerably greater.

---

5. Civil Rule 52(a) provides:

"(a) *Effect.* In all actions tried upon the acts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon and direct the entry of the appropriate judgment; and in granting or refusing interlocutory injunctions the court shall similarly set forth the findings of fact and conclusions of law which constitute the grounds of its action. Requests for findings are not necessary for purposes of review. Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of trial court to judge of the credibility of the witnesses. . . . If an opinion or memorandum of decision is filed, it will be sufficient if the findings of fact and conclusions of law appear therein. . . ."

6. Civil Rule 54(b) states:

"(b) *Judgment Upon Multiple Claims or Involving Multiple Parties.* When multiple claims for relief or multiple parties are involved in an action, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates less than all of the claims or the rights and liabilities of less than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties."

The maximum interest rate which could be charged lawfully on this type of loan in 1968 was 8 percent.[7] On its face this loan was usurious.

 In Metcalf v. Bartrand, 491 P.2d 747, 750 (Alaska 1971), we adopted the rule of Wilcox v. Moore, 354 Mich. 499, 93 N.W.2d 288 (1958). The court in *Wilcox* stated that in determining whether a transatcion is usurious, a court must look to the real nature of the transaction, in order to avoid "the betrayal of justice by the cloak of words, the contrivances of form, or the paper tigers of the crafty." *Id.* at n. 1, 291. Intent to violate the usury law will be presumed when the loan agreement unequivocally calls for an impermissible rate of return on the indebtedness. Metcalf v. Bartrand, *supra,* 491 P.2d at 750–751.

That the transaction here was cast in terms of a "lease with option to purchase" does not save it from the application of the usury statute. Lease-purchase contracts or contracts for the sale of land are often used as devices to disguise usurious loans. When this is the case, courts unhesitatingly pierce through the transaction to determine whether, in substance, a usurious loan was negotiated. Metcalf v. Bartrand, *supra* at 750–751; McKeeman v. Commercial Credit Equipment Corp., 320 F.Supp. 938 (D.Neb.1970); Burr v. Capital Reserve Corp., 71 Cal.2d 983, 80 Cal. Rptr. 345, 458 P.2d 185 (1969).

We hold, therefore, that the superior court's finding was clearly erroneous. Under the applicable statutory provision, usury results in a forfeiture of the entire interest on the debt.[8] It follows that the judgment in this case must be modified. The superior court allowed Moran $2,102.-60 as interest on the loans, computed at 8 percent. This amount must instead be deducted from the sum that Moran will receive under the judgment, and Kenai's share of the recovery should be increased accordingly.

We affirm the judgment, as modified. We remand for the entry of a modified judgment.

Affirmed in part, reversed in part.

---

7. AS 45.45.010(b). This rate was amended in 1969 to allow, in certain types of transactions, a rate not in excess of four percentage points above the annual rate charged member banks for advances by the 12th Federal Reserve District.

8. AS 45.45.040; Metcalf v. Bartrand, *supra,* 419 P.2d at 753–754.