## ALASKA STATE HOUSING AUTHORITY, Appellant,

v.

## James SIPARY and Henry Sookiayak, Appellees.

### No. 6946.

Supreme Court of Alaska.

Sept. 2, 1983.

---

Richard L. Crabtree, Wanamaker, De-Veaux & Crabtree, Anchorage, for appellant.

Bruce Horowitz, Alaska Legal Services Corp., Anchorage, for appellees.

Before BURKE, C.J., RABINOWITZ, MATTHEWS and COMPTON, JJ., and CUTLER, Superior Court Judge.*

## OPINION

MATTHEWS, Justice.

This appeal presents a dispute over the right to fire insurance proceeds received by Alaska State Housing Authority (ASHA) following the destruction of two houses. The houses were being purchased from ASHA under conditional sales contracts, one by James Sipary, the other by Henry Sookiayak. Sipary and Sookiayak were participants in a program aimed at alleviating housing problems in remote areas of Alaska. Under the program, ASHA supplied building materials and supervised the construction of over 200 houses in native villages and sold the houses to participants. Because of government subsidies, Sipary was required to pay ASHA only $5,078 for

---

* Cutler, Superior Court Judge, sitting by assignment made pursuant to article IV, section 16, of the Constitution of Alaska.

his house, and Sookiayak was required to pay $7,975.

The program participants began moving into completed houses in late 1972. By mid-1973, they were complaining of serious defects.[1] Four class actions were filed against ASHA alleging, among other things, defects in the design and construction of the houses built in the program. Sipary and Sookiayak were class members.

The house belonging to Sookiayak, located in Shaktoolik, burned on November 10, 1975; Sipary's house, located in Toksook Bay, burned on May 5, 1977. Except for a small amount paid by Sookiayak, ASHA had been paying all fire insurance premiums on both houses. ASHA received proceeds of $34,900 on Sipary's house, and $32,500 on Sookiayak's house.

The class actions were settled by stipulation on March 21, 1979. The trial court approved the stipulation and maintained continuing jurisdiction to facilitate its implementation.

The stipulation provided that ASHA would

refund to each class member the total amount of money (including principal, interest, and all other payments) paid by the class member to ASHA . . . ;

and

cancel all indebtedness of class members for the houses . . ., release them from any further obligations whatsoever under any "Conditional Sales Contract" involving these houses, and . . . release them from any other obligations to ASHA arising out of the construction and use of these houses;

and, finally

convey and quitclaim to the appropriate class member or members the title to their house. . . . The document conveying and quitclaiming title to the house shall also convey to the appropriate class member . . . any other interest which ASHA may have in the house or the

property upon which it is located and shall release and waive any lien or encumbrance on the property in favor of ASHA which has arisen or may arise by operation of law or otherwise.

In return for the actions to be taken by ASHA, the class members who did not elect to be excluded from the operation of the settlement were to

waive all legal claims, existing or potential, which the home buyers have against ASHA, its employees, or the State of Alaska which arise out of the class members' relationship with ASHA with regard to the houses. . . .

The class members were sent written notices of the proposed settlement, the headings of which were translated into the appropriate native language. They were given until May 13, 1979 to respond, in writing, if they wished to opt out. Neither Sipary nor Sookiayak did so. ASHA then sent a notice of proposed refund to each class member. Neither Sipary nor Sookiayak objected to ASHA's offer to refund exactly what they had personally paid.

On or about August 30, 1979, ASHA delivered instruments conveying the interests in the houses and the funds reimbursing money paid by homebuyers to counsel for the class members, Alaska Legal Services Corporation ("ALSC"), for distribution to class members. Pursuant to the order approving the settlement, ALSC had the sole responsibility for further distribution.

When the required Report on Settlement Distribution was filed in December, it was noted that Sipary and Sookiayak had not been mailed refunds because of a dispute as to distribution of the insurance proceeds.

The parties then filed a Stipulated Statement of Facts and submitted briefs regarding the right to the proceeds. Judge Serdahely ruled that the issue was controlled by the terms of the settlement agreement,

---

1. Complaints included floors splitting open, wall posts separating from ceilings, inadequate heating, malfunctioning stoves, ice formation on interior walls, furniture freezing to interior walls, inferior and unwashable wall paint, leaking roofs, doors that could not be opened, defective and dangerous wiring, and defective plumbing.

in particular paragraph 23(c) which provides in relevant part:

> The document conveying and quitclaiming title to the house shall also convey to appropriate class member or members *any other interest* which ASHA may have in the house or the property upon which it is located. . . .

(Emphasis added by the trial court.) The court construed the quoted language "to mean that the parties intended to convey title to existing houses as well as interest in insurance coverage on such houses to plaintiffs." The court ruled that ASHA was entitled to be paid its costs incurred in obtaining the insurance out of the insurance proceeds. The balance of the proceeds, however, was to be paid to Sipary and Sookiayak. The court stated:

> Absent the settlement agreement in the main case herein, defendant ASHA may also have been entitled . . . to be repaid any outstanding indebtedness owing on the house sale contracts between defendant and plaintiffs. The May 18, 1979 settlement and order approving the settlement between the parties, however, extinguished such indebtedness of plaintiffs. Under that agreement, the plaintiffs gave up their right to pursue legal remedies for alleged defects in their homes, while the defendant forgave any outstanding indebtedness on such houses, and quitclaimed title and "any other interest" in such houses to plaintiffs.

The court also awarded Sipary and Sookiayak prejudgment interest from the date of ASHA's receipt of the proceeds.

ASHA has appealed, arguing (1) that under the settlement agreement it should have been allowed to retain the proceeds, or at least that portion representing the amount "owed" by Sipary and Sookiayak; (2) that payment of lesser sums to ALSC constituted an accord and satisfaction; and (3) that the computation of prejudgment interest was incorrect. We find error only in the computation of prejudgment interest.

## I

ASHA's first claim is that the trial court misconstrued the settlement agreement.

The court interpreted the language of paragraph 23(c) to mean that the parties intended to convey title to existing houses as well as interest in insurance coverage on such houses to appellees. In the words of the trial court, "[a]ny contrary interpretation leads to an absurd result, namely that the parties intended . . . ASHA would . . . convey . . . title to burned out and non-existent houses."

We believe the trial court's construction of the settlement agreement was sound. ASHA's interpretation would create a superfluous settlement term. Additionally, the parties would reasonably expect "other interests" to include money received from fire insurance.

ASHA argues that by "any other interest" it meant to insert a catch-all term, meaning to convey such contract interests as the right to remove the house and "title" interests. Appellees point out that "title" interests are waived elsewhere and the waiver of liens and encumbrances defeats ASHA's right to remove the house. Effect should be given, where possible, to every part of a contract. *Stordahl v. Government Employees Insurance Co.,* 564 P.2d 63, 66 n. 7 (Alaska 1977). ASHA's interpretation would create a superfluous settlement term. The trial court's construction gives effect to all terms of the agreement.

"The purpose of contract interpretation is to ascertain and effectuate the reasonable expectations of the parties." *Stordahl,* 564 P.2d at 65. Appellee's argument is consistent with the trial court's interpretation that the parties would reasonably expect "other interests" to include proceeds of fire insurance which, in effect, substitute for the destroyed property. *Ferro v. Citizens National Trust and Savings Bank of Los Angeles,* 44 Cal.2d 401, 282 P.2d 849, 854 (1955); *In re Robl's Estate,* 163 Cal. 801, 127 P. 55 (1912); *Dolan v. Spencer,* 92 Colo. 389, 21 P.2d 411, 412 (1933); *In re Hickman's Estate,* 41 Wash.2d 519, 250 P.2d 524, 527 (1952). Further, the trial court's decision has the effect of putting the parties in the

position they would have been in had the fires not occurred. This accomplishes the general purpose of obtaining fire insurance. If the fires had not occurred Sipary and Sookiayak would have been, under the settlement, entitled to their respective houses free and clear of any obligation to ASHA. The insurance proceeds approximate the value of the destroyed houses. Sipary and Sookiayak thus receive, in value, what they would have received, except for the fires.

ASHA, when the fires took place, was entitled to the amount owed on each contract, plus premium expenses, and Sipary and Sookiayak were entitled to the balance of the insurance proceeds. *Moran v. Kenai Towing and Salvage, Inc.,* 523 P.2d 1237, 1240 (Alaska 1974). Thus Sipary and Sookiayak were, under the common law, entitled to the insurance proceeds in excess of the contract balance after deducting premium expenses. In addition, they were entitled, under the settlement, to a refund of the contract balance paid by insurance for the reasons stated above.

## II

ASHA next claims that even if the proceeds should have been transferred under the settlement, ASHA's offer, and appellees' acceptance, of lesser sums was an accord and satisfaction.

"An accord is a contract between a creditor and a debtor for the settlement of the creditor's claim by some performance other than that which is due." *Stephenson v. Ketchikan Spruce Mills, Inc.,* 412 P.2d 496, 498 (Alaska 1966). ASHA argues that the terms of the settlement provided that the

claimants' silence after receiving notice of the proposed refund constituted an acceptance of its offer to pay the sums proposed.

The notice informed claimants only that they were entitled to a refund of money they actually paid to ASHA.[2] It stated a proposed amount and set a time limit for objections. The wording did not purport to cover claims or amounts received from third parties to which claimants were arguably entitled.

ASHA also urges that the final paragraph of the notice operated as a release. In order for a release to be effective it must be given with an understanding of what is being released. *See Schmidt v. Lashley,* 627 P.2d 201, 204 (Alaska 1981). For the notice to have been operative as a release Sipary and Sookiayak must have understood that there was a claim for insurance proceeds and that they would be giving up that claim by their inaction. There is no suggestion in the record that this was the case.

The trial court therefore did not err in refusing to find that appellees had agreed to accept sums less than those due them.

## III

ASHA's final point is that the court erred in awarding appellees' prejudgment interest. ASHA argues that the settlement agreement itself does not mention the payment of prejudgment interest, that prejudgment interest was not paid to other class members, and that appellees therefore should not receive prejudgment interest. We find no merit in this argument.

---

2. The text of this notice reads as follows:

The Court has approved the settlement in these lawsuits involving ASHA houses. You are supposed to get back everything you paid ASHA for your house.

ASHA has figured out that you have paid $_____. Unless you write a letter to the Superior Court and object, that money will be sent to you in about one month.

If you think ASHA owes you more, you must write the Superior Court and say so or have a letter written for you. You must send this letter so that it reaches the Court no later than [thirty days from mailing]. *If you don't write*

*the Court and say ASHA owes you more, you will have to be satisfied with what they give you.*

    ASHA Class Actions
    c/o Clerk of Superior Court
    303 K Street
    Anchorage, Alaska 99501

If you say ASHA owes you more, ASHA will
    (1) pay you that amount, if ASHA says you are right, or
    (2) pay you the amount ASHA thinks is right and tell you how you can go to court to ask for the rest.

"The real question in awarding interest to a judgment creditor is whether the debtor has had use of money for a period of time when the creditor was actually entitled to it." *Farnsworth v. Steiner,* 638 P.2d 181, 184 (Alaska 1981). "It is only when such an award would do an injustice that it should be denied. We have observed that such an injustice would occur 'only in the most unusual case....' " *Id.* (citing *Davis v. Chism,* 513 P.2d 475, 481 (Alaska 1973); *State v. Phillips,* 470 P.2d 266, 274 (Alaska 1970)). In the present case ASHA had the use of the insurance proceeds in excess of the sums due from appellees for several years. Appellees were entitled to these sums independent of the settlement. *Moran v. Kenai Towing and Salvage, Inc.,* 523 P.2d 1237, 1240 (Alaska 1974). The other class members had the use of their homes, while the appellees had neither the use of their homes nor the use of their money. Therefore there is no injustice here which might compel denial of prejudgment interest.

However, prejudgment interest on the contract amounts paid by insurance which was to be refunded under the settlement should not begin to accrue until the settlement should have been performed. The refunds became due only because of the settlement agreement and therefore prejudgment interest thereon should be governed by the terms of the settlement agreement.

For these reasons the judgment of the superior court is affirmed except as to the award of prejudgment interest. The case is remanded for recalculation of prejudgment interest in accordance with the views expressed herein.

AFFIRMED AND REMANDED for. Recalculation of Prejudgment Interest.